2357. LOCOMOTIVE ENGINEERS' MUTUAL LIFE & ACCIDENT INSURANCE ASSOCIATION *v.* BOBO.

1. Where, in a policy of life-insurance, issued by a benefit association, and in the by-laws of the association, it is expressly provided that "any member of this association neglecting or refusing to pay any assessment, when ordered as provided in the by-laws, . . shall forfeit all right and title to membership, and be debarred from further participation in the insurance or benefits arising from the same," the non-payment of assessments, when so ordered, will, in the absence of any waiver by the association, forfeit the policy and all benefits thereunder.
2. A benefit association sued by the beneficiary of a policy can not successfully defend on the ground that the policy was forfeited by non-payment of assessments, unless proof is made that the assessments in question were ordered or levied, and notice thereof given to the insured in accordance with the by-laws of the association.
3. In this case the evidence clearly and satisfactorily shows that the insured had neglected and failed to pay assessments against his policy, made in accordance with requirements of the by-laws, of which he had due notice; and it does not appear that the forfeiture of the policy, resulting from the non-payment, was in any manner waived by the association.   The verdict against the association is without evidence to support it, and must be set aside as contrary to law.

DECIDED JULY 5, 1910.   REHEARING DENIED SEPTEMBER 6, 1910.

Action on insurance policy; from city court of Polk county— Judge Irwin.   December 8, 1909.

*J. A. Wright, Seaborn & Barry Wright,* for plaintiff in error.
*Trawick & Ault,* contra.

HILL, C. J.   Laura Hutchings Bobo brought suit against the Locomotive Engineers' Mutual Life and Accident Insurance Association, as the beneficiary in a policy of insurance on the life of her brother, W. H. Hutchings.   A demurrer to the petition was overruled, and exceptions pendente lite preserved.   The jury found a verdict in her favor for the full amount of the policy, and the defendant's motion for a new trial was denied.   We may dispose of the exceptions arising on the judgment overruling the demurrer

by the statement that they were without merit, and that the judgment was correct. Besides the usual general grounds in 'the original motion for a new trial, there are numerous assignments of error in the amended motion. Omitting, as a useless consumption of the valuable time of this court, any discussion of many immaterial questions raised by the numerous assignments of error, we come directly to the essential and controlling issues in the case. The evidence elucidating and illustrative of these issues will appear in the course of the opinion.

·1. The insured was killed by the explosion of a boiler in August, 1907. Was the policy in force at the time of his death? The defendant claims that it was not, that it had been forfeited by the failure of the insured to pay the assessments made by the company against the policy for the months of April, May, June, and July, 1907. This makes the first issue of fact. On this issue the only evidence that the insured had kept his policy in force by the payment of the assessments thereon is found in two letters or reports made by the secretary of a subdivision of the insurance company, located at Cedartown, Georgia. After the death of the insured this secretary wrote to the company, at its principal office, that the insured had paid his assessments up to the date of his death, and that the failure to mention that fact to the company in the monthly report "was an error of mine." Acting on this statement, the insured was entered upon the general register of the company as having paid his assessments. On the trial of the case this local secretary at Cedartown testified, that the report which he had made out and sent to the home office, that the insured had paid his monthly assessments up to the date of his death, was untrue: that in fact the insured had not paid the assessments for April, May, June, and July; that he had been induced to make this false report after the death of the insured for the following reasons: that just before the death of the insured early in the month of August, he had a conversation with the insured at Cedartown, when he called his attention to the fact that his assessments had not been paid; that on that occasion the insured promised to pay the assessments on the following pay day, which was the 18th of August, and that in the same conversation the insured informed him that he wanted to change the name of the beneficiary in the policy, from that of his sister to that of his wife, he having married subsequently to

the inception of the policy, and that he then requested the agent to write out the proper transfer, changing the name of the beneficiary in the policy, and for this purpose he delivered to the agent his policy.  The widow was very poor, the agent states, and he had been informed by the husband of the sister named as beneficiary that his wife did not desire to make any claim on the proceeds of the policy, and, wishing to secure the money for the widow, he himself wrote out the statement changing the beneficiary, signed the name of the insured thereto, and sent this transfer along with the proof of loss to the company, with a statement that the assessments had been duly paid, and from his own money remitted the amount of the assessments.  The agent testified that all of these things were done by him after the death of the insured, and that he was prompted solely by the motive to secure the insurance for the benefit of the penniless widow of a brother engineer.  It is contended that the jury had the right to believe the report made by the agent to the company, notwithstanding his testimony on the subject.  It must, however, be conceded that this report by the local secretary or agent possesses little evidentiary value, in view of the sworn explanation made by the agent on the trial of the case.  But other evidence shows that the insured, during his life and just before his death, stated that his insurance had lapsed and was not in force; and there is no evidence whatever, in the form of receipts or vouchers, that the assessments had ever been paid, nor was there any record of the fact in the office of the company, either at the local office at Cedartown or at the home office, except the record which was made at the home office, based upon the untrue report of the agent after the death of the insured.  Taking all these facts and circumstances into consideration, and giving to them due weight, the conclusion is irresistible that the insured had not paid the assessments on his policy during the months of April, May, June, and July, prior to his death in August, and that if the verdict of the jury was based on the finding that these assessments had been paid, it was without evidence to support it.  If the assessments had not been paid, under the terms and conditions of the policy and according to the constitution and by-laws of the company, the contract of insurance was forfeited.  The policy provides that "any member of this association neglecting or refusing to pay any assessment when ordered as provided in the by-laws,  .  .  shall for-

feit all right and title to membership, and be debarred from further participation in the insurance or benefits arising from the same." The constitution and by-laws of the association provide, in § 15, that "the secretary of each subdivision shall keep a list of the members of the association connected therewith, and forward their names to the general secretary-treasurer as soon as possible after placing them on the list. He shall also erase the names of those who fail to pay any assessments within the specified time, and report the same to the general secretary-treasurer, that they may be erased from the general register." Section 26 provides, that "any member failing to pay the assessments when ordered as provided in the by-laws, or within the prescribed time, shall forfeit his membership, and shall forfeit all right and title he or his beneficiaries may have to any benefits or claims in or against this association." It follows, from the provisions of the contract and the constitution and by-laws quoted, that the insured and his beneficiary forfeited all right to any benefit or claim arising from the policy upon the failure of the insured (or some one for him during his life) to pay the current assessments made by the company against the policy.

2. To avoid this result, it is contended by learned counsel for the plaintiff in error that it was not satisfactorily shown that any assessments had been levied or declared against the policy which had not been paid by the insured. It is contended that the burden was on the association to show that the assessments had been duly levied or declared. This court is unreservedly committed to the proposition that no presumption will be indulged in favor of forfeitures, and especially of forfeitures of contracts of insurance; and where a beneficial association, sued upon a policy, seeks to escape liability upon the ground of a failure to pay premium or assessment, or upon any other ground of forfeiture, the burden would be upon the association to prove the fact relied upon as establishing the forfeiture; and we hold that the association can not successfully defend upon the ground that the policy lapsed by non-payment of assessments, unless proof is made of the levy of the assessments, and that notice of such assessments was duly given to the insured, in accordance with the requirements of the policy, or of the constitution and by-laws of the association. 29 Cyc. 246 · Tourville *v.* Brotherhood of Locomotive Firemen, 54 Ill. App. 71. Section 26 of the constitution and by-laws of the association is as

follows: "The assessments and all notice pertaining to the business of the L. E. M. L. & A. I. A. as printed in the B. of L. E. Monthly Journal shall be deemed or taken to be lawful, sufficient, and the only notice thereof to all the members." It is insisted by the defendant in error that this provision applies only to the notice of the assessments, and not to the levy of the assessments; and if the provision quoted was the only provision on the subject, this might be well contended. It is insisted by counsel for the plaintiff in error that the levy or declaration of the assessments on the policy is made in no other way than by publication of the assessments in the Brotherhood of Locomotive Engineers' Journal; and in proof of this assertion, attention is directed to the following extract from the Journal: "Locomotive Engineers' Mutual Life & Accident Insurance Association. Official notice of assessments 1037-1041. Series G. Office of Association, Room 803, Society for Savings Building, Cleveland, Ohio, March 1, 1907. To the Division Secretaries L. E. M. L. and A. I. A.: Dear Sirs and Bros.: You are hereby notified of the death or disability of the following members of the Association. Five assessments for the payment of these claims *are hereby levied* and Secretaries ordered to collect $1.25 from all who are insured for $750, $2.50 from all who are insured for $1,500, $5 from all who are insured for $3,000, and $7.50 from all members insured for $4,500, and forward same to the General Secretary and Treasurer. Members of the Insurance Association are requested to remit to Division Secretaries within thirty days from date of this notice, . . on penalty of forfeiting their membership." Section 45 of the by-laws provides that when the general secretary-treasurer shall receive from the secretary of the subdivision a report of a loss under a policy by death or accident, the president and general secretary-treasurer "shall issue a notice through the Journal, stating the age and date of admission and date and cause of death; also name of party to whom his insurance is payable, and order an assessment, to pay the same, of not less than fifty cents for each $1,500 policy held, upon each assessable member." Construing all these sections together, we are clearly of the opinion that the publication of the assessments in the Brotherhood of Locomotive Engineers' Monthly Journal constituted a levy or declaration of such assessments. Section 26, above quoted, provides that the assessments as printed in the Brotherhood of

Locomotive Engineers' Monthly Journal shall be deemed or taken to be "lawful and sufficient," and that the notice of such assessments published in this Monthly Journal shall be "the only notice thereof to all members." We think the words "lawful and sufficient" apply to the levy of the assessments, and not to the notice of the assessments; for it is further provided that the notice as published shall be the only notice thereof to all members; and the language of the notice quoted from the Journal distinctly declares that "five assessments for the payment of these claims [those specified in the notice] *are hereby levied.*" The levy consists in the publication of the assessments in the Journal. In other words, the only provision that the by-laws contain with reference to the levy of an assessment is that which relates to the publication of this assessment in the Brotherhood of Locomotive Engineers' Monthly Journal, and the provisions from the by-laws which we have quoted deal not only with the notice of the assessments, but also with the declaration or levy of the assessments. Usually the by-laws of similar organizations provide that the levy shall be made and entered on the minutes, or made and entered on a book kept for that purpose; but the only provision for the assessment and the levy, and the notice thereof, in the by-laws of the present association, introduced in evidence, is that relating to publication of the assessments in the Brotherhood of Locomotive Engineers' Journal. When the president and the general secretary-treasurer receive from subdivision secretaries information of losses under the policies, it is made their duty, under the by-laws, to order assessments through the Journal. It is not provided that the assessments so ordered shall be spread on the minutes of the association, or kept in the book for that purpose, but that they shall be published in the Journal, and it is distinctly declared that this publication shall be "deemed lawful and sufficient," both as to the levy of the assessments and as to the notice of the assessments to the members. Any other method of levying, declaring, or ordering the assessments is entirely imaginary and speculative. But even if the argument based upon the provisions of the constitution and by-laws of the association be not conclusive of this question, it would seem not unreasonable to hold that the publication by the association, in its monthly Journal, of assessments against its policy-holders would be sufficient to raise a presumption that such assessments had been

levied and declared by the association. In other words, it would seem to be unreasonable to say that the assessments against policy-holders had not been levied or declared, although such assessments had been published. The publication of the assessments presupposes their levy or declaration. "Acts done by a corporation, which presuppose the existence of other acts to make them legally operative, are presumptive proof of the latter." Demings v. Supreme Lodge Knights of Pythias, 131 N. Y. 522 (30 N. E. 572).

"The record of an assessment of a mutal insurance association, reciting that the resolution ordering the assessment 'was unanimously adopted by the directors as a body, and by the executive committee,' is prima facie evidence against the members of the association." Van Frank v. Association, 158 Ill. 560 (41 N. E. 1005); Anderson v. Mutual Reserve Fund Life Association, 171 Ill. 40 (49 N. E. 205). It would seem from these authorities, as well as on principle, that when the association published in its monthly Journal, recognized and treated as its official organ, the assessments to pay losses, the presumption would follow, in the absence of an attack on the legality of the assessments otherwise, that all necessary steps preliminary to making the assessments had been duly taken by the association.

3. Did the association, under the evidence in this case, waive the forfeiture of the policy by the failure to pay the monthly assessments? It is contended by counsel for the defendant in error that the forfeiture was waived first by the conduct of the secretary of the subdivision at Cedartown in ignoring the provisions of the by-laws and the terms of the contract relating to the payment of assessments due by members. It is claimed that this agent or secretary had a very loose way of conducting his business; that he permitted the members to pay their dues whenever they saw fit, not insisting upon prompt payment, and that, therefore, the fact that the agent failed to collect the assessments when due, this being his general custom and practice, was sufficient to lull the members into inactivity on the question of prompt payment. The evidence does not show that the association itself approved of such slack methods of business on the part of the agent at Cedartown, but shows that the non-payment of assessments by the members as required by the by-laws was excused only when the secretary himself assumed the payment. The evidence on this subject was positive by the agent

himself.    He testified: "It is not true that the policy of this organization and the general custom is to accept dues from these members after they are delinquent.    I did not do it regularly at this place; only in a few instances, and the company always accepted them when I took it on my part."    Even admitting that the business methods of the secretary permitted a delay in the payment of assessments, such delay was in the very teeth of the by-laws on the subject which declared in positive terms that the members of the association should remit to the division secretaries, within thirty days from the date of the publication of the notice in the Monthly Journal, on penalty of the forfeiture of their membership. If a member, therefore, delayed in paying his assessments in accordance with the by-laws, he took the risk of forfeiture; but if, after the delay, he did in fact pay the division secretary the assessment, and the division secretary accepted the payment and afterwards forwarded it to the association, his failure to pay according to the by-laws would not be attended with the penalty of forfeiture; for the company would not have known whether the delay was due to the member or its agent; but this advantage to the member could accrue only during his lifetime.    The assessments which had not been paid during his life could not be paid after his death so as to amount to a waiver.    The beneficiary in the policy, or any one else, after the death of the insured, could not, by paying the assessments due by the insured, which he had failed to pay during his lifetime, avoid the forfeiture.    *Mutual Benefit Life Ins. Co.* v. *Ruse, 8 Ga.* 545.    In this case the division secretary testifies (and it is not controverted), that the insured did not pay the assessments for April, May, June, and July, and that after the death of the insured, for the purpose of securing the money for the penniless widow of the insured, he himself remitted the money to cover the assessments, and untruthfully reported to the company that the insured had paid them.    In other words, the secretary, forgetful of his fiduciary relationship to the company, and actuated by sympathy for the widow of the deceased, attempted to restore the forfeited policy after the death of the insured, and knowingly made this attempt by means of untrue statements.    Under section 2063 of the Civil Code, this conduct clearly made him guilty of a misdemeanor, and, by the same section, any certificate or renewal so secured was made absolutely void.

In the next place it is said that the company issued a policy to the wife, in accordance with the direction as to change of beneficiary, signed by the insured; but surely this could not be construed as a waiver of the forfeiture, under the uncontroverted facts. The association did not at that time know of the forfeiture. It had a report from its secretary that the policy with the sister as the beneficiary was in force, and, believing these things to be true, it accepted the money in payment of the assessments, which the agent had sent, and issued the new policy to the wife. If these facts proved anything, they proved payment of the assessments, and not a waiver of the forfeiture on account of their non-payment. As they were accepted in ignorance of the true situation and in reliance upon the false statement made by the agent, and as the evidence shows that the money was returned to the agent on the discovery of his false representations, we think the evidence did not show either payment or waiver, but that the policy issued to the wife by virtue of the false statements was expressly void under the code section cited, supra. But if not void under this code section, it would be void because the insured was at the time of its issuance not in an insurable condition, but dead. In the third place, it is insisted that the company waived the forfeiture by demanding the payment of assessments after the insured had failed to pay them, and after the policy had lapsed thereby. There are several reasons why this contention is unsound. The publication of the assessments in the Journal for the four months was directed to all the members of the association. It was not a notice sent to one who had ceased to be a member by reason of the lapse of his policy, nor was it a demand made on any one member for the payment of his assessment after notice of previous non-payment and a forfeiture resulting therefrom. This court has held that subsequent demand of assessments or premiums is a waiver of the forfeiture of the policy and an acknowledgment that the delinquent policy-holder is still entitled to the benefits conferred by his contract with the association. *Farmers Mutual Life Protective Association* v. *Elliott,* 4 *Ga. App.* 342 (61 S. E. 493). But we do not think that this principle is applicable to the facts of this case, for the assessments called for in the publication of the Monthly Journal were a demand on the members of the association,—members who held policies for certain amounts. It was not a demand on those who had

ceased to be members, because of a failure to pay their assessments.

It is contended in the next place that the general register kept at the home office showed that the association had received the assessment from the insured for the month of July on his policy. The local secretary at Cedartown testified positively that the insured had not paid the July assessment; that he himself had paid it after the death of the insured, and it was placed upon the general register after the false report of the payment by the insured had been received by the company from its agent at Cedartown. In the light of this evidence, it can not be rationally assumed that the insured did in fact pay the July assessment.

We have thus considered what we think are the material issues under the evidence in this case. There may have been inaccuracies in some of the instructions given by the court in his charge to the jury, though the charge as a whole seems to have been full and explicit as to the material issues in the case. There may be some merit in some of the numerous assignments of error, but on the main questions which should control we are convinced, from an examination of all the facts, that the forfeiture of the policy set up by the defendant was clearly and most satisfactorily shown; that the levy of the assessments which were not paid by the insured was made according to the by-laws of the association, and that there was no evidence whatever of any waiver by the association of the forfeiture of the policy which resulted from failure, on the part of the insured or the beneficiary, to pay the assessments lawfully made. Under the view we entertain of the law applicable to these controlling questions, the facts demanded a judgment for the defendant.

*Judgment reversed.    Powell, J., concurs specially.    Russell, J., dissents.*