*McCallum & Sims,* contra.

---

11614.   HARTFORD STEAM BOILER INSPECTION & INSURANCE COMPANY *v.* COCHRAN OIL MILL & GINNERY COMPANY.

Where two policies of insurance are partly coextensive as to the character and subject-matter of the risk assumed, but afford protection in common as to injuries to one particular class of persons when brought about by one particular cause, and where both contain inconsistent clauses whereby each insurer attempts to limit its liability for a loss of that kind to excess insurance only and provides that in such a case the other insurer is to be primarily, and it only secondarily, liable, and where effect can be given to only one or the other of these limitations without defeating the protection of the insured under both policies, the rule to be adopted is to require that the company whose policy affords specific insurance so far as such particular risk is concerned shall answer primarily for the loss.

DECIDED FEBRUARY 15, 1921.

Action on insurance policy; from Bleckley superior court — Judge Graham. April 26, 1920.

On September 4, 1917, the Georgia Casualty Company issued to and in favor of the Cochran Oil Mill & Ginnery Company a $10,000 policy of liability insurance, under which the insured was protected for one year against loss on account of liability growing out of injuries to any of its employees, but with a provision limiting its liability for injuries to any one such person to the sum of $5,000. On September 8, 1917, the Hartford Steam Boiler Inspection & Insurance Company renewed for a period of three years a $10,000 policy of steam-boiler insurance in favor of the Cochran Oil Mill & Ginnery Company, by which it became liable to the insured on account of loss arising from any explosion of certain described boilers and pipes belonging to the plant of the insured, the stated liability extending to compensation first for any property loss occasioned by such an explosion, and secondarily for injuries or death to any person brought about by such an explosion, with a limit of $5,000 for personal injuries to any one person. A stipulation of the Hartford Company's policy provided as follows: "If at the time of an explosion, collapse or rupture, there is in effect any contract or other provision requiring any other insurance company, or any association or individual, or body politic or corporate, to pay to the assured, or in his behalf or stead, damage resulting from injury or death of a person or compensation therefor, the insurance by this policy shall become effective and applicable only on the portion of the assured's loss with respect to said person that is in excess of the indemnity named in or required to be paid under said contract or provision, and in such case the insurance by this policy is to be considered as excess insurance and not as contributing insurance; (b) but if at such time there is not in·effect any such contract or other provision with respect to the injury or death of said person, then the insurance by this policy against such loss of the assured may be applied on any part of said loss." On October 17, 1917, there was attached to the Georgia Casualty Company policy a rider providing as follows: "In the event the assured shall carry steam-boiler insurance covering any boiler or boilers on the premises described in this policy, it is expressly understood and agreed that this company shall not be liable for any loss resulting from death or injury

to any person or persons caused by the explosion, collapse or rupture of such boiler, boilers, or appurtenances so insured, except as follows: If an explosion, collapse or rupture of any boiler, boilers, or appurtenances so insured shall occur in, upon, or about the premises and in the business, trade, or work of the assured as in this policy described, and shall result in bodily injuries or death of any employee or employees whose compensation is included in the estimated pay roll herein set forth, then and in that event only this policy, subject to its terms, limitations, and conditions, shall be excess insurance only, and shall become applicable, effective, and available only after such boiler insurance has been exhausted in the payment of such claims." It is conceded that each of the insurance companies received the full premium usually charged for such policies, without any reduction being made in consideration of the above-quoted limitations.

On October 19, 1917, an employee of the insured was injured on account of the explosion of one of the steam pipes referred to above. The claim for damages was adjusted and settled by the insured for the sum of $150, after each of the insurance companies had been notified of the claim, and after both had refused payment on the ground that the other insurance company was liable. The insured then brought suit against the Hartford Steam Boiler Inspection & Insurance Company, and attached to the petition a copy of the policy issued by the Georgia Casualty Company, as well as a copy of the Hartford Company's policy. The case came to this court on exceptions to the overruling of the defendant's demurrer to the petition. In a supplemental brief, counsel for the Hartford Company specifically withdrew, by direction of their client, the contention that on account of the insured's direct adjustment of the claim with the employee the insurer was not liable.

*C. Edgar Blake, J. M. Bleckley, Smith, Hammond & Smith,* for plaintiff in error. *P. F. Brock,* contra.

JENKINS, P. J. (After stating the foregoing facts.) While the Georgia Casualty Company is not an actual party to the litigation, and the judgment herein rendered cannot, therefore, be taken as an adjudication of its rights or obligations, the practical question raised by the pleadings in this case is, which of the two insuring

companies is responsible to the insured under the facts disclosed. In oral argument before this court, counsel for defendant in error made the statement that the interest he in fact represented was that of the Georgia Casualty Company; and that the purpose of this litigation is to adjudicate and set at rest any doubt or uncertainty which may exist by virtue of the quoted and inconsistent stipulations contained in the two policies of insurance. Counsel representing neither of the companies whose interests are involved proceed on the theory that they are concurrent insurers and, as such, are liable to proportionate contribution; but on the contrary, each insurer assumes that one of the policies is primary and the other is excess insurance, just as is expressly provided by each of them. In this attitude we think they are correct. But the principles involved in questions of proportionate contribution may throw light upon the question of liability in the instant case.

The proper construction of policies of insurance as regards proportionate contribution between two or more insurers has given rise to many and diverse rules, and has sometimes been considered one of the most difficult and troublesome questions in the law of insurance. The proposition is simple enough where there are several valid policies in different companies, which insure the same party, upon the same subject-matter, and assume the same risk. This constitutes what is denominated " double insurance," and under a statute of this State (Civil Code of 1910, § 2544) and according to the rules established by all of the courts, each policy must in such a case contribute proportionately to the loss, even in the absence of any specific provision so requiring. *Fireman's Fund Ins. Co.* v. *Pekor,* 106 *Ga.* 1 (2) (31 S. E. 779). Where, however, the insurance is not strictly the technically " double " insurance,— that is, where the policies are not limited to the same subject-matter, and the risk assumed is not identical or coextensive, but one policy is a " general," " compound," or " blanket " policy, and the other is " specific," and the rules of priority are not specifically provided for by the policies themselves,— there arises a great diversity and lack of harmony in the various rules laid down by the appellate courts of different jurisdictions. In some of the courts, notably that of Pennsylvania, it has been held, and the rule there remains so established, that in the adjustment of a loss where the property was covered both by a specific policy and a blanket policy, even a

clause in the former to the effect that in case of any " other insurance " upon the property thereby insured, such specific policy should be liable only for a proportionate amount of the loss, did not authorize the right of proportionate contribution from the general or " blanket " policy. Sloat Co. *v.* Royal Ins. Co., 49 Pa. 14 (88 Am. Dec. 477). The majority of the courts seem, however, to have adopted a different theory, and have established and laid down in their several jurisdictions varied and complex rules governing the proportionate adjustment of loss under such policies. The rules thus established have been variously referred to as the Vermont, the Connecticut, and the Kentucky rules. See case note in Grollimund *v.* Germania Fire Ins. Co., L. R. A. 1915 B, 509; 5 Joyce on Insurance (2d ed.), § 3457; Richards on Insurance (3d ed.), §§ 315-318, and notes.

While the one fundamental principle that underlies each of the different rules which have been thus established will be herein later referred to, it does not seem necessary for us to go into a further discussion of these questions, since, as already stated, each of the policies before us, by its express terms, designates the risk assumed by it, for a loss such as has actually occurred, as excess insurance only, for which it is only secondarily liable. One or the other of these specific limitations can be given effect without detriment to the rights or interest of the insured. The question, therefore, is, which of the policies, in so far as the particular risk involved is concerned, is really primary or basic insurance, and which is in fact excess insurance only. As counsel for defendant in error aptly remarks: " Before either policy can ride as *excess* insurance, the other must be made to walk as *primary* insurance."

It is not contended by counsel for either of the insuring companies that the inconsistent and antagonistic provisions could work a forfeiture so as to defeat the rights of the insured against one or the other insurer. As previously stated, the full premium rate was paid to each of the companies without any diminution of charge on account of the other insurance; and " this court is unreservedly committed to the proposition that no presumption will be indulged in favor of forfeitures, and especially of forfeitures of contracts of insurance." *Locomotive Engineers Life Asso.* v. *Bobo, 8 Ga. App.* 149, 152 (68 S. E. 842). In a case such as is

now before us, that is, where the several policies are of a different nature and character, and where the risk assumed is only partly coextensive, and where each policy expressly provides that the risk assumed, at the point of mutual contact, is "excess" insurance only, and therefore secondary to the other policy, the decisive test to be applied in determining which of these two limitations is to be given effect, that is, which is really primary or basic insurance, and which is excess insurance only, lies in the answer to the question as to which insurance is general and which is specific in its nature.

The identical question here presented appears to be one of first impression. Neither the Supreme Court nor this Court, nor an appellate court of any other jurisdiction, seems to have had just such a question before it. In *United Underwriters Ins. Co.* v. *Powell,* 94 *Ga.* 359 (21 S. E. 565), our Supreme Court upheld a provision in a general or "floating" policy of insurance, to the effect that it should not be made to share in losses for property which was otherwise covered by specific insurance. This principle was reaffirmed and followed in *Macon Fire Insurance Co.* v. *Powell,* 116 *Ga.* 703, 704 (43 S. E. 73), in which case the Supreme Court quoted approvingly the language used in the former case, as follows: " A floating policy of insurance which declares that it does not cover cotton on which there is any more specific insurance, does not embrace or apply to any cotton which is specifically insured in another company, and therefore is not subject to share with the other company the burden of loss sustained by the latter or by the insured in respect to the cotton covered by the more specific insurance; and for this reason, the company issuing the floating policy cannot be called upon to contribute to a loss resulting from destruction of the cotton covered by the more specific insurance, although the policy touching the latter contain a clause declaring that ' in case of any other insurance upon the property hereby insured, whether made prior or subsequent to the date of this policy, the assured shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured thereon, whether by specific or floating policies. ' " See also Cooley's Briefs on the Law of Insurance, Vol. 1, pp. 521, 522.

If, therefore, it could be clearly and definitely determined that one of the policies set forth in the record is general in its nature, and the other definite and specific, then if the loss be covered by the policy which is thus specific in its nature, that policy would be the one which should be called upon to answer to the assured. In construing the two policies of insurance, it would seem, on first impression, that neither of them is manifestly and plainly general, and neither is clearly specific. The protection afforded by the Hartford policy is more general in its nature than is the case with the Georgia policy, in that the former primarily covers loss to property, and incidentally or secondarily provides protection in case of injury to persons. It is also more general, in that even such protection as is thus afforded on account of injuries to persons embraces any and all persons who might be injured by such an explosion, and is not restricted to the employees of the insured. On the other hand, it is urged that the Hartford policy is more specific, or at least more narrow in its scope than the Georgia policy, in that the insurance is confined to injuries arising from the one particular and stated cause, to wit, an explosion of the designated boilers or pipes, and for the additional reason that the risk thus assumed is necessarily confined to a much more limited number of persons than is the case with the Georgia policy, since the Hartford policy could only apply to those persons, whether employees or not, who might be within the immediate environs of the boilers and pipes at the time of the explosion. It might thus seem that under neither policy is the risk assumed, as compared with the other, so plainly definite and specific as was the case in the cotton-insurance policies considered by the Supreme Court in the two cases above cited.

The reason for the difficulty which seems to arise when we undertake to definitely point out one of these policies as specific and the other as general lies in the difference in the nature and character of the contracts. In each of the cases before the Supreme Court both of the policies insured cotton against loss by fire. The policies were of the same nature, whereas in the instant case, although the two policies are in part coextensive as to risk, they are nevertheless of very different type and character. One em-

ployer's liability insurance protects the employer against loss growing out of various sorts of injuries to his employees. The other is a boiler insurance contract, whereby the company agrees to become liable on account of any explosion of boilers, first and primarily for injury to property, and only secondarily on account of any personal injury thus caused. A comparison of the policies for the purpose of determining which is specific and which is general cannot, therefore, be made by simply, as it were, laying one policy over upon the other, in order to see which over-laps or extends the furthest. Their form and purpose are too different for the application of any such simple process. The nature of the risks and duties assumed, as well as the subject-matter of the insurance, is widely diverse. The only point of contact, the only contingency under which both policies become applicable, is *where an employee is injured on account of a boiler or pipe explosion.* For the purpose of comparison it would seem to be proper, therefore, to disregard the various elements and provisions of the two contracts, except as they bear upon or relate to the happening of the *one contingency under which each policy might be held primarily or secondarily liable.* In this way only can we concentrate the inquiry as to which of the two policies is general and which specific, under the one contingency where the risk assumed as well as the subject-matter of the insurance is common to both policies.

Upon an employee being injured by such an explosion, the Hartford Company is liable first and primarily for the inevitably resulting property loss; and should there then be a surplus of insurance left over, it is liable for injuries occasioned both to employees and to others not employees. Upon the happening of such a contingency the liability of the Casualty Company, on the other hand, is limited solely to personal injuries to employees. Thus, in any case where both of the policies could possibly take effect, the liability of the Hartford Company for personal injuries is general, while that of the Casualty Company is limited and specific.

It is a familiar and well-settled principle of law that contracts of insurance are to be liberally construed in favor of the policy-holder. *Insurance Co. of North America* v. *DeLoach, 3 Ga. App.*

807 (61 S. E. 406); *Missouri State Life Ins. Co.* v. *Lovelace,* 1 *Ga. App.* 446, 447 (58 S. E. 93); 14 Ruling Case Law, 926. For the reason which the statement of this principle suggests, we are the more convinced as to the correctness of our conclusion, since, under any possible contingency which might exhaust the protection afforded by either policy, such a construction will afford more ample and complete protection to the assured. Without stating concrete illustrations, or entering upon any extended argument for the purpose of demonstration, it can be readily seen that such is in fact the case; and in laying down a general rule governing the construction of such policies in respect to the question as to which is general and which specific, we think this basic principle has its proper application. In the beginning of this discussion something was said concerning the different rules of construction adopted by the various appellate courts governing the method of proportionate contribution in cases where one policy is specific and the other general or compound. In the different modes of procedure which have been variously adopted, the underlying basis of all is that any proper rule of apportionment must afford to the assured the fullest measure of indemnity under all the policies. This has ever been held to be the controlling feature of any proper rule of apportionment. As was said by Lord Mansfield in one of the early cases: "In no case must the contribution clause be construed in such a manner as to throw loss upon the insured, against which he would have been fully protected had the policies been free from that clause." Goodin *v.* London Assurance Co., 1 Burr. 489.

While, as already stated, under the express clauses of limitation in each of the policies, the doctrine of contribution is not involved in the instant case, still it would seem, by analogy, that in determining which of the policies is general and which specific, and in this way giving effect to one or the other of these provisions, it would be at least proper, if not indeed altogether necessary, to consider, in the light of the underlying principle of that doctrine, which construction would, under all possible contingencies, afford the greatest measure of protection to the assured, since the decision of the point involved lays down a general rule governing the construction of the contracts themselves.

The plaintiff having brought suit against the Hartford Company for compensation on account of an injury to an employee, and having attached to its petition a copy of its policy of employer's liability insurance in another company, and it appearing that by the terms of each of the policies the risks here involved is sought to be made excess insurance only, but since such risk, so far as it is covered by the Hartford Company, is general, and as covered by the other contract is specific, it follows that the liability of the defendant was secondary only, attaching only after exhaustion of the other or specific insurance, and that, under the facts alleged, the demurrer should have been sustained.

*Judgment reversed. Stephens and Hill, JJ., concur.*