## MARYLAND CAS. CO. v. NEIMAN-MARCUS CO.

### No. 13131.

United States Court of Appeals
Fifth Circuit.

Jan. 5, 1951.

W. J. Holt, Harold Hoffman, and Pat Coon, all of Dallas, Tex., for appellant.

Newton Gresham, Houston, Tex., William A. Rembert, Jr., J. L. Lancaster, Jr., Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, and McCORD and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

The suit was against several insurers for the recovery of losses the insured had sustained. The complaint, alleging that the defendants named had investigated the loss suffered and had agreed that the amount claimed, $80,344.52 was correct, set forth a schedule [1] apportioning it among the defendants. It then went on to say: that defendant, Maryland Casualty Company, had taken the position that the damage to plaintiff's property sued for was not the result of the perils insured against by it; that it was, therefore, not liable for any part of the loss; and that the other companies named, while admitting their liability for the whole sum, claim that, under the terms of its policy, Maryland is also liable for one-half of it and the other companies for the other half in the proportions set out in plaintiff's schedule.

1. Maryland Casualty Company $39,836.68
   Fireman's Fund Indemnity Company .............. 671.15
   Royal Insurance Company, Ltd. .................. 13,278.90
   United States Fire Insurance Company ............. 3,319.72
   The Home Insurance Company .................. 1,659.86
   Aetna Insurance Company ... 1,327.89
   Fire Association of Philadelphia .................. 3,651.70
   Insurance Company of North America ............... 9,959.17
   Springfield Fire & Marine Ins. Co. .................. 6,639.45
   Total .................. $80,344.52

Maryland answered, denying that the losses sued for by plaintiff were the result of perils insured against in Maryland's policy and setting out the nature and limits of the coverage that policy afforded.[2]

It further pleaded: that one object insured by its policy was known as a shell cooler or heat exchanger; that that object did not explode but froze; that the defendant had paid plaintiff for all loss of property directly damaged as the result of that freezing; that the property for which plaintiff sues was not directly damaged by the freezing; that an interval of approximately three hours elapsed between the cracking and the escape of ammonia and the time the explosion occurred in a fire box or furnace in the basement of plaintiff's building; and that the damage plaintiff sues for did not result directly from the freezing and cracking of the shell cooler, but from an intervening cause, the negligence of plaintiff's employees in failing to keep the fan running and in failing to discover the situation before the explosion and thereby prevent the loss it caused.

The other defendants in answers of substantially the same purport, claimed, as plaintiff had pleaded they did, that Maryland was liable for one-half the loss, and they were liable for the other half, in the proportions scheduled.

The case was tried to a jury, and, at the conclusion of all the evidence, the court instructed a verdict for the plaintiff against the defendants, apportioning it in accordance with plaintiff's claim, and Maryland Casualty Company has appealed.

Here it argues vigorously that the evidence presented a fact issue upon whether, within the meaning of its policies, the cracking of the shell cooler directly damaged the property, the loss of which is sued for, and that the judge erred in directing a verdict.

It argues further that, assuming its liability for a part of the damages, it was error to hold it liable under the pro rata liability clause of its policy for one-half of the damages. It insists that, on the contrary, the loss charged to it should have been arrived at by the application of the pro rata liability clauses of the other insurance companies in accordance with the amount of insurance carried by each.

On the issue of Maryland's liability, the other companies rely, indeed they pitch their whole case, upon Dixie Pine Products Co. v. Maryland Cas. Co., 5 Cir., 133 F.2d 583, in which Maryland made substantially the same contention it makes here, and our decision in Federal Insurance Co. v. Tamiami Trail Tours, 5 Cir., 117 F.2d 794, and similar cases.

On the issue of apportionment, the other insurance companies, insisting that Maryland must stand bound to its own proposal, point out that their pro rata clauses could not apply to Maryland, because their policies covered different perils from that insured against by Maryland, and their pro rata clauses were made expressly to apply only to policies covering the same peril, while Maryland's was not.

They urge upon us, therefore, that the only pro rata clause that could apply here, as between them and Maryland, is the "other insurance" provision or pro rata clause of the Maryland policy.[3]

2. This was only accidents to "All Refrigerating Vessels and Piping of Refrigerating and air conditioning systems"; "All air tanks, hot water tanks, clothes pressing machines, hot blast heating units and steam radiators"; "All Fire Tube & Water Tube Boilers"; and "All C.I.S. Hot Water Supply Boilers and Storage and coil water heaters"; but excluded furnace explosion in connection with the aforesaid boilers and water heaters, and, in connection with the aforesaid C.I.S. water supply boilers and water heaters, excluded boiler piping. Further, in this respect, this defendant says that its policy covered only loss on property "directly damaged" by the accident which it insured against.

3. "3. In the event of loss of a kind described in Sections I, II and III, to which both this insurance and other insurance carried by the Assured apply, herein referred to as 'joint losses', the Company shall be liable only for the proportion of the said joint loss that the amount in-

■ We are not in any doubt that under the holding in the Dixie Pine case the evidence was ample to support a jury finding that Maryland is liable under its policy. Nor are we in any, despite Maryland's urging to the contrary, that the evidence establishes Maryland's liability as matter of law and the instructed verdict was justified.

Precise and careful examination of the record in the light of the arguments and contentions of appellant convinces us that the record is completely devoid of any evidence tending to show, as claimed by Maryland, that the occurrence was a furnace explosion or a fire loss within the "furnace explosion" or fire loss explosion clauses of its policy. It convinces us, too, of the complete untenableness of Maryland's contention, that the claimed negligence of the insured, in not keeping the exhaust fan running and in not sooner discovering the escape of the ammonia and protecting against its consequences, was, within our holding in the Dixie Pine Products case an "intermediate controlling and self-sufficient" intervening cause [133 F.2d 585], Federal Ins. Co. v. Tamiami, supra.

Appellant's argument, vigorously put forward in its supplemental brief, that this is a case not of insured's negligence prior to the occurrence of the accident, which is, of course, not a defense, but of its failure after the accident to take all necessary precautions to minimize its results, finds no support in the record. The evidence it refers to and relies on goes only to the negligence in not having the fan running and the negligence in not sooner discovering the danger and preventing its consequences. There is not one syllable of evidence showing, or tending to show, that plaintiff knew of the situation in time to prevent the consequences, the losses from which this suit was brought to recoup. There is none to rebut the compelling inference that the destruction of the property sued for was directly caused by the freezing and cracking of the shell cooler and the escape of the ammonia,

the peril Maryland's policy admittedly insured against.

An examination of the opinions on the two appeals in the Dixie Pine Products case, including Judge Sibley's concurring opinion, shows that the fact issues, which the case was sent back to try, are not presented in this case. They were: (1) whether the ruptured pipe was an "inter-connecting pipe and as such a part of the extractor vessel, or whether it was an outlet pipe excluded from the policy provisions"; (2) whether "neglecting to extinguish the fire" after it became known was the true direct cause of the explosion; and (3) whether the injured extractors were not injured by overpressure caused by the pump rather than by the external explosion and before the explosion took place.

When the case came back the second time, the Court said: "Appellee bolstered its case by further showing that it was not negligent in failing to prevent the explosive vapors from reaching the boilers."

Two of the judges who sat in the Dixie Pine Products case had sat also in the Tamiami case, and the third judge was in full agreement with the Tamiami decision. That Court certainly did not intend to hold, as is in effect contended here, that an issue of fact was made by the claim here put forward that there was negligence on the part of the insured in not discovering the danger and preventing its consequences.

■ Appellant's other point, that the judgment was wrong in fixing Maryland's liability at one-half of the loss, is, we think, no better taken. Indeed when it is considered that both appellant and appellees agree that the plaintiff could have claimed from Maryland, without joining the other companies, or from them, without joining Maryland, the whole loss, it is difficult to understand how Maryland can predicate a legal complaint against the judgment which condemns it to pay only half of the loss.

If, as appellees contend, the *pro rata* clause of Maryland's policy is applicable

dependently payable under this policy on account of said loss (had no other insurance existed) bears to the combined total of the said amount and the amount

independently payable under all other insurance on account of said loss (had there been no insurance under this policy). Suits against Assured."

because, though the risks insured against are different from those insured against in their policies, Maryland "has, by its policy recognized its liability to share with any other insurance covering the loss (regardless of identity of property and peril)", certainly Maryland cannot complain of the application of that clause merely because the insurance carried by it is much less than that carried by the other companies.

If the shoe were on the other foot, if Maryland's policy were for $3,000,000 and the other policies in the aggregate for only $500,000, Maryland would have been the last to raise the cry it now raises that its *pro rata* clause was not applicable and the loss must be apportioned on the basis of the insurance carried by each company. Had this cry been raised by the others those circumstances, Maryland could and would have pointed to the terms of its policy as fixing its proportion of the loss as one-half, regardless of the amount of the insurance it carried.

If, as appellant insists and as appellees agree, the principle of contribution among co-insurers does not apply in the absence of "other insurance", or "*pro rata* clauses" in the various policies, and if, as appellant further insists, to constitute other insurance which will permit proration of a loss, the policies "must cover the same risk, property, or subject matter and interest", it seems clear to us that Maryland is not in a position to claim injury when, liable for the whole amount and, without benefit of contribution or proration, it is sued, and recovered against, for only one-half of its full liability.

The cases appellant cites as supporting its claim to an equitable apportionment do not do so. The Bergstrom Paper Co. v. Continental Ins. Co. case, 7 Cir., 174 F.2d 636, in our view, is to the contrary, for it presented as the primary consideration in a suit where several insurance companies are concerned, "the insured must be fully indemnified", and because of this, it modified the *pro rata* clause of policies which would otherwise have been given effect. It did this not on any considerations of equitable apportionment but on the strict basis, as far as that was possible, of the contracts of the insurance companies, and it assessed the whole of the "gap" or deficiency against Hartford because the peculiar clause of its policy and the facts did not warrant the extension of liability on the other policy beyond the limit fixed in its clause. Instead of being a holding in favor of settling issues of the kind raised here on general equitable principles, the invoked decision gave a strict construction to the apportionment clauses as far as possible and departed from them only to the extent necessary to satisfy insured's demand.

If the opinion of the district court in the other case cited, New Amsterdam Casualty Co. v. Hartford, Accident & Indemnity Co., D.C., 18 F.Supp. 707, can be considered as containing anything in it of benefit to appellant, this was swept away on appeal, 6 Cir., 108 F.2d 653, 656, by the holding of the appellate court that appellant was liable for the whole loss "and the view of the District Court that the parties were coinsurers is erroneous".

It is admitted by all that plaintiff had a right to join all the companies with Maryland in the suit, and, this being so, it is difficult to see how Maryland can complain because plaintiff elected to treat its *pro rata* clause as applicable and to claim no more from it than was fixed thereby.

■ Finally, if equitable considerations, rather than plaintiff's election within the limits of the full liability which the insurers were under, are to be entertained, there is much to be said for the view put forward in Hartford Steam Boiler Inspection & Insurance Company v. Cochran Oil Mill & Ginnery Co., 26 Ga.App. 288, 105 S.E. 856, that between two insurers, one limiting its liability to injuries growing out of boiler insurance, the other being general, the boiler insurer should be held primarily liable because the risk it had specifically insured against was the source of the liability.

Here the source of the liability was the peril Maryland had insured against. But for the freezing and cracking of the shell cooler, there would have been no liability. In a suit to recover the losses caused there-

by, if equities are to be invoked, there is much to be said for the view that requiring Maryland to pay only one-half of the loss is certainly not visiting an inequity on it.

The judgment is

Affirmed.