**GREENBRIAR SHOPPING CENTER, INC., Plaintiff,**

v.

**LORNE COMPANY, Inc., Defendant and Third-Party Plaintiff,**

v.

**TEXAS PACIFIC INDEMNITY COMPANY, Third-Party Defendant.**

**Civ. A. No. 10637.**

United States District Court,
N. D. Georgia,
Atlanta Division.

March 3, 1969.

Long, Weinberg & Ansley, Atlanta, Ga., for plaintiff and third-party defendant.

Greene, Buckley, DeRieux, Moore & Jones, Atlanta, Ga., for defendant and third-party plaintiff.

ORDER ON DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AGAINST PLAINTIFF AND AGAINST THIRD-PARTY DEFENDANT AND THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AGAINST THIRD-PARTY PLAINTIFF

SIDNEY O. SMITH, Jr., District Judge.

This is a suit in which plaintiff Greenbriar Shopping Center (Greenbriar) originally sued defendant Lorne Company, Inc. (Lorne), a sub-contractor in the construction of the shopping center, for $101,802.36 as damages allegedly arising out of Lorne's agreement to construct a sewer line at the plaintiff's shopping center. Plaintiff contends Lorne dug a ditch near an existing building, and the ditch caved in as the result of Lorne's negligent failure to shore up the ditch in spite of plaintiff's warnings, causing the roof of the nearby building to collapse, resulting in the damages sued for. Defendant Lorne answered denying that it was negligent, and contending that if the caving in of the ditch was caused by the negligence of any party, it was the result of the negligence of either the plaintiff, as owner, or Jones, the general contractor, in failing to adequately inform and warn of the danger.

Defendant Lorne also filed a third-party complaint against Texas Pacific Indemnity Co. (Texas Pacific) alleging that if Lorne were found to be liable on the amount sued for, Texas Pacific would be liable to Lorne for all of Greenbriar's claim against it under a policy of insurance number IM 200936 issued by Texas Pacific under which Lorne claims both it and Greenbriar are insureds.

Texas Pacific makes the following contentions in support of its motion for summary judgment.

(1) Defendant has failed to show that it was an insured under this builder's risk policy because of the provision that a subcontractor can only be an insured under the policy "at the option" of the

named insureds. There is no evidence that such option was exercised. In fact (a) no premiums were paid, (b) the contract between Jones and Lorne provided specifically that Lorne should provide its own insurance in connection with the construction project, (c) no notice was given by Lorne of its exercise of the option. (2) The policy does not cover a tort action of this kind. The policy coverage relates to the building and the only possible insureds are those who have an insurable interest in the building, specifically Greenbriar and Jones and only at the option of the owner or the general contractor could any subcontractor be covered if its duties involved construction of the building. (3) Even if Lorne was an insured, this policy would not be relevant because of paragraph nine of the installation floater, *i. e.*, the "other insurance, excess clause." This policy would pay for losses only to the extent that other insurance does not cover the loss. Texas Pacific contends that such insurance did exist in a policy issued by Reliance Insurance Co., a policy that the subcontractor was required to obtain. The insurance was obtained by Lorne from Reliance, and it constitutes "other Insurance" within the meaning of Texas Pacific's policy. (4) Plaintiff holds the funds from Texas Pacific pursuant to a loan receipt only. Plaintiff must repay to Texas Pacific any amounts recovered and therefore plaintiff is still the real party at interest.

Defendant's contentions may be outlined thusly. (1) Lorne is an insured under the policy in that the option was exercised when the policy expressly named as insureds the "subcontractors". The policy names Lorne as an assured, it being one of the subcontractors. Any ambiguity in this regard must be strictly construed against Texas Pacific. (2) The policy issued by Texas Pacific is not an exclusive builder's risk policy but rather a policy of liability insurance, not requiring Lorne to have an insurable interest in the building. Paragraph 5(1) of the installment floater insures against direct loss or damage caused by "all other

risks of physical loss or damage resulting from any external cause except as hereinafter excluded." Paragraph 6(E) has the effect of not excluding from the policy coverage " \* \* \* loss due to collapse of any structure or material part thereof." (3) The Texas Pacific policy is the primary insurance which covers the incident in question, with the result that the excess insurance provision is without force and effect. The policy issued by Reliance is merely a comprehensive general automobile policy. Therefore, the Reliance policy is merely secondary as opposed to the primary status of the Texas Pacific policy which provided specific coverage as to this particular loss. The specific coverage should apply even where there is an excess insurance clause. (4) Only Texas Pacific, having been the party issuing the policy, has the right to assert this issue. Texas Pacific has waived any right to proceed against Lorne by its payment, under the terms of the policy, "for the account of all parties."

The Installation Floater attached to policy number IM 200936 contains the following language: "Issued to Greenbriar Shopping Center, J. A. Jones General Contractor and Subcontractors As Their Interests May Appear." Paragraph 1 of the same document provides:

This policy covers building materials and equipment of all kinds, installed or to be installed, incurred labor, accrued expense, accrued overhead and accrued profit used in construction or installation work being performed by the assured. The policy applies to the above described property owned by the assured. The policy applies to the above described property owned by the assured and held by them in trust or for which they may be held legally liable, or sold but which may not be deemed delivered until installed, while in temporary storage and during construction or installation until the interest or liability of the assured ceases.

Paragraph 3 provides:

At the option of the assured and with respect only to property located at the

site of the installation or construction work, the policy also covers the interest of subcontractors of the assured and the interest of the owner or prime contractor for whom the work is being performed. Any loss shall be adjusted and paid to the named assured for account of all parties.

Paragraph 5 listed the risks covered by the policy:

(1) All other risks of physical loss or damage resulting from any external cause except as hereinafter excluded.

Paragraph 6 listed the exclusions:

(e) Against loss or damage caused by wear and tear, inherent vice, mechanical breakdown, latent defect, gradual deterioration, faulty workmanship or material, or error in design; *but this exclusion shall not apply* to loss by any peril enumerated in Paragraphs 5(a) through 5(k), nor does it apply *to loss due to collapse of any structure or material part thereof;*

Resolution of the issues presented in this case must rest upon the language of the Texas Pacific policy. At the outset the Court must note that it seems apparent that the parties intended that the Texas Pacific policy not cover this type of claim and that the parties intended recovery to be made under the Reliance policy. However, if this intent does not appear on the face of the policy and the policy as worded provides coverage, then the Court's inquiry must proceed no further. Much attention has been devoted by Texas Pacific to the question of whether an option has been exercised to include Lorne as an insured under the policy. There is no evidence before the Court that would support a finding that such an option has been exercised by any of the parties. Lorne would argue that the option provision of Paragraph 3 has been rendered inoperative as to Lorne by the inclusion in the definition of insureds all "Subcontractors As Their Interests May Appear." Lorne would argue that the typed language would take precedence over the printed language of Paragraph 3. The Court agreees with Lorne's position to the extent that if Lorne is an insured under the policy, then no further option was required. If construed narrowly the provisions of Paragraph 3 are consistent with the provision designating the named insured.

■ It is also apparent to the court that the policy was not designed to cover one insured against a loss occasioned by the tort of another insured. For example, loss caused by a subcontractor's vehicle negligently driving into a plate glass window is hardly a typical builder's risk peril. However, the broad inclusion of loss due to collapse opens the policy to a broad construction in favor of any insured. It is concluded, then, that the policy is deficient in failing to exclude such peril.

■■ The policy itself provides that only subcontractors with an interest (*i. e.*, labor and materials) in the project could be an insured. Moreover, the law of Georgia requires that the insured have an insurable interest in the property. See Ga.Code § 56–2405. The tendency is for courts to give a rather broad definition to "insurable interest" when used in connection with this type of policy. See, *e. g.*, Lititz Mutual Ins. Co. v. Lengacher, 248 F.2d 850 (7th Cir. 1957). Under the showing now present, the court could only conclude that Lorne did have the requisite insurable interest in the premises to support a claim under the policy. Was Lorne a "named insured" under the policy? The foundation for this decision has been discussed above. At best the policy is ambiguous as to which parties were to be named insureds. Under Georgia law such an ambiguity must be construed most strongly against the insurer. See Ga.Code § 20–704 ¶ 5; Benevolent Burial Assn., Inc. v. Harrison, 181 Ga. 230, 181 S.E. · 829 (1935); Mattox v. New England Mut. Life Ins. Co., 25 Ga.App. 311, 103 S.E. 180 (1920). Although the printed portions of the contract would leave some ground for arguing that Lorne did not qualify as a named insured, the typed portion leads the Court to conclude that Lorne was a named in-

sured under the policy, and that the peril is not excluded.

 However, Paragraph 9 of the Texas policy provides as follows:

This company shall not be liable if, at the time of any loss or damage, there is any other insurance which would attach if this insurance had not been affected, except that this insurance shall apply only as excess and in no event as contributing insurance, and then only after all other insurance has been exhausted. Permission is granted, however, for other contributing insurance written upon the same plan, terms, conditions and provisons as those contained in this form.

Paragraph 13 of the Reliance policy provides:

Other insurance: If the insured has other insurance against a loss covered by the policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance.

Lorne takes the position that the Texas policy provided protection against the type of loss which in fact occurred in this case, whereas, the Reliance policy merely provided a general liability coverage. By virtue of this fact, Lorne argues that Texas' coverage is primary as opposed to the secondary coverage of Reliance. In support of this proposition, Lorne relies upon Hartford Steam Boiler Inspection & Ins. Co. v. Cochran Oil Mill & Ginnery Co., 26 Ga.App. 288, 105 .S.E. 856 (1920):

If, therefore, it could be clearly and definitely determined that one of the policies set forth in the record is general in its nature, and the other definite and specific, then if the loss be covered by the policy which is thus specific in its nature, that policy would be the one which should be called upon to answer to the assured.

*Id.* at 294, 105 S.E. at 858. However, the *Hartford* case is distinguishable in one crucial respect, for there both policies provided that they were to be excess insurance and only secondarily liable. Therefore, the Georgia court shifted to the further inquiry of which policy covered this specific risk. In *Hartford* a situation arose in which " * * * the rules of priority are not specifically provided for by the policies themselves." *Id.* at 291, 105 S.E. at 857. The instant case involves a policy containing an "excess insurance" clause (the Lorne policy) and a policy containing a "pro rata" clause (the Reliance clause). The reported cases indicate that excess insurance does not constitute "other insurance" within the meaning of a pro rata clause. Therefore, unless the policy containing the pro rata clause is not sufficient to cover the loss, then the excess insurance does not attach. See *e. g.,* General Ins. Co. of America v. Western Fire & Casualty Co., 241 F.2d 289 (5th Cir. 1957); McFarland v. Chicago Exp., Inc., 200 F.2d 5 (7th Cir. 1952). A full discussion of these principles is found in United States Fidelity & Guaranty Co. v. Slifkin, 200 F.Supp. 563 at 579 (N.D. Ala.1961) (property insurance as contrasted with the automobile insurance cases cited above). In Jewellers Mutual Ins. Co. v. Balogh, 272 F.2d 889 (5th Cir. 1959) (property insurance), the Court held that the excess insurance provision of a policy was not applicable, as the policy itself removed from the operation of the "other insurance" clause situations in which coverage was claimed by reason of the "legal liability of the Assured." *Id.* at 894. The limits of the Reliance policy are adequate to cover the loss in question. See Heil deposition at p. 14. Accordingly, the Texas policy does not attach to this loss. Lorne also contends that Texas has already satisfied

this claim for the benefit of Lorne and all other parties. The Georgia law is very clear on this proposition for loan receipts have long been upheld by the courts of Georgia. See, e. g., Clark v. American Casualty Co., 96 Ga.App. 328, 99 S.E.2d 897 (1957) ; Green v. Johns, 86 Ga.App. 646, 72 S.E.2d 78 (1952); Annot., 13 A.L.R.3rd 42.

Accordingly, the third party defendant's motion for summary judgment against the third party plaintiff is granted and the defendant's motion for summary judgment against plaintiff is denied.

It is so ordered.