CONSOLIDATED MUTUAL INSURANCE COM-
PANY *v.* BANKERS INSURANCE COMPANY
OF PENNSYLVANIA

[No. 468, September Term, 1965.]

*Decided November 14, 1966.*

The cause was argued before HAMMOND, C. J., and MAR-
BURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Samuel S. Smalkin,* with whom were *Rollins, Smalkin, Weston & Andrew; Ginsberg & Ginsberg* and *Hyman Ginsberg* on the brief, for appellant.

*Wilbur D. Preston, Jr.,* with whom were *Due, Whiteford, Taylor & Preston* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This case, a "conflict between fortuitous adversaries," [1] involves the relative liabilities of two insurance companies to defend suits and pay any judgment recovered against their insured, who had been involved in a highway collision.

The material facts have been stipulated by the parties. The appellee, Bankers Insurance Company of Pennsylvania (Bankers), issued a policy of liability insurance to Edward Miller of Philadelphia, covering a Corbitt Tractor and Semi-Trailer. Miller entered into an agreement to lease the tractor to Apex Express, Inc. (Apex). The lease was executed on November 3, 1962. Apex was insured by a liability policy issued by the appellant, Consolidated Mutual Insurance Company (Consolidated).

On November 19, 1962, the tractor picked up a loaded trailer, owned by a subsidiary of Apex for transportation to Brooklyn. Miller, himself, drove the tractor initially, but became ill. He supplied in his place as driver, William A. Gaskins. Miller accompanied Gaskins for some distance in order to make sure that Gaskins was competent to drive the entire trip, and when he was satisfied as to Gaskins' competency, Miller left the tractor and transferred to another truck. Continuing the trip alone, Gaskins became involved in a serious accident, for which suits were instituted by the injured third-parties. These suits were still pending at the time of this appeal, a new trial having been granted after verdict in the various cases.

Bankers demanded that Consolidated defend both Miller and Gaskins in these damage actions, but its demand was refused. Bankers then defended both Miller and Gaskins in the pending

---

1. Brown and Risjord, Loading and Unloading: The Conflict Between Fortuitous Adversaries, 29 Ins. Counsel J. 197 (1962).

damage suits and filed this bill of complaint for declaratory judgment and other relief against Consolidated.

Both insurers agree that Apex, Miller and Gaskins are all entitled, under "omnibus clauses" in both policies, to the protection of each policy. The sole question is which policy affords primary coverage. The case was tried in the Circuit Court of Baltimore City. The Chancellor (Prendergast, J.) found that the Consolidated policy afforded primary coverage to Apex, Miller and Gaskins and that the Bankers policy was excess. Consolidated has appealed from a decree dated September 21, 1965, declaring that Consolidated was the primary insurer and as such had the duty to defend the pending actions, pay all reasonable expenses in connection with that defense and reimburse Bankers for $17,672.40, the reasonable defense costs incurred by it in that defense. A monetary decree was entered for that amount in favor of Bankers and against Consolidated.

Both policies contain what is commonly referred to as an "other insurance" clause. Each insurer maintains that under this endorsement in its policy, its liability in a double coverage situation is specifically limited to the *excess* over any other valid and collectible insurance.

(1)

"Other insurance" clauses were originated in the property insurance field in order to protect the insurer from the "moral hazard" resulting from the over-insurance of property. These clauses sought to discourage intentionally and fraudulently inflicted self-injury to the insured's property, and received ready enforcement by the courts. Although the "moral hazard" of over-insurance is not present in the liability field, "other insurance" clauses in this area of the law are neither invalid nor unconscionable and also have met with uniform judicial recognition.

Three general types of "other insurance" clauses commonly appear in modern automobile liability policies: (1) the *escape* clause, whereby the policy is declared not to cover the insured in a double coverage situation; (2) the *excess* clause, whereby the insurer declares itself liable up to the limits of its policy only for the excess amount, if any, necessary to indemnify the insured after the other insurer has paid to the full limit of its

coverage; (3) the *pro-rata* clause, whereby the insurer obligates itself for a ratable share of the loss in the same proportion which the limit of its own policy coverage bears to the aggregate total coverage protecting the insured.

In cases where two or more of these "other insurance" clauses conflict, most courts resolve the problem of double coverage by attempting to reconcile the conflicting clauses.[2] This Court has followed this approach. *Celina Mutual Casualty Co. v. Citizens Casualty Co.,* 194 Md. 236, 71 A. 2d 20, 21 A.L.R. 2d 605 (1949); *Citizens Casualty Co. of N. Y. v. Allied Mutual Ins. Co.,* 217 Md. 494, 144 A. 2d 73 (1958); *Zurich Insurance Co. v. Continental Casualty Co.,* 239 Md. 421, 212 A. 2d 96 (1964). This approach recognizes that the rights and liabilities of the different insurers involved should depend, as far as possible, upon the specific language of the policies. The relative liabilities of the insurers are contingent, in each case, upon the characterization of the "other insurance" provisions as escape clauses, excess clauses or pro-rata clauses.

(2)

We turn to the policies involved in the instant case.

The fourth clause of Bankers' endorsement entitled, "Long Haul Truckmen—Limited," provides:

> "4. Other Insurance. With respect to any automobile of the commercial type, *while leased or loaned to any person or organization,* other than the named insured, *engaged in the business of transporting property by automobile for others,* or any hired-private passenger automobile insured on the 'cost of hire' basis, or any non-owned automobile, the insurance shall be *excess insurance* over any other valid and collectible insurance." (Emphasis supplied).

---

2. Other approaches include (1) holding the more "specific" insurer liable to the exclusion of the more "general" insurer, (2) holding the insurer of the primary tort-feasor primarily liable, and (3) placing primary liability on the insurer whose policy was prior in time. See Note, Automobile Liability Insurance—Effect of Double Coverage, 38 Minn. L. Rev. 838, 841-47 (1954) and cases therein cited; Comment, 5 Stan. L. Rev. 147 (1952).

Bankers' "other insurance" clause clearly is excess insurance as to any automobile of a commercial type "leased * * * to any person or organization * * * engaged in the business of transporting property by automobile for others * * *." The tractor, leased by Miller to Apex, falls within this category, even though the driver, Gaskins, was supplied by the lessor. Cf. *McFarland v. Chicago Express,* 200 F. 2d 5 (7 Cir. 1952) ; *Continental Casualty Co. v. American Fidelity & Casualty Co.,* 275 F. 2d 381 (7 Cir. 1960) (an identical provision in which it was conceded that a tractor and trailer was a "hired automobile" within one meaning of the lessee's policy).

The seventh clause of Consolidated's endorsement entitled, "Receipts Basis—Truckmen," states as follows :

> "7. Other Insurance. If the insured has other insurance against a loss covered by this policy, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, with respect to any automobile of the commercial type, while leased or loaned to any person or organization *other than the named insured,* engaged in the business of transporting property by automobile for others, or any hired private passenger automobile insured on the 'cost of hire' basis, or *any non-owned automobile,* the insurance shall be excess insurance over any valid and collectible insurance." (Emphasis supplied).

Appellant has argued, both in its brief and before us, that Consolidated's policy should be construed as excess insurance because the above clause refers to "non-owned" vehicles. Viewing the entire Consolidated policy, however, we do not agree. The "Receipts Basis-Truckmen" endorsement expressly affords coverage for bodily injury and property damage to "all owned automobiles *and hired automobiles,* and the use, in the business of the named insured, of non-owned automobiles," subject to the limitations imposed by the "other insurance" clause. The

sixth clause of the endorsement defines "hired automobiles" and "non-owned automobiles" as follows:

"6. Definitions.

* * *

(b) 'Hired Automobile' means an automobile *used under contract in behalf of,* or loaned to the named insured * * *.

(c) 'Non-Owned Automobile' means *any other automobile.*" (Emphasis supplied).

The tractor leased by Miller to Apex was a "hired automobile" within the policy's own definitions since it was used under contract in behalf of Apex. The tractor is not a "non-owned automobile" within the meaning of the policy. See *Bituminous Casualty Corp. v. Travelers Insurance Co.,* 122 F. Supp. 197, 202-03 (D. C. Minn. 1954) (broadly interpreting the term "hired automobile" under definitions identical to those used in the Consolidated policy); *Overly v. American Fidelity & Casualty Co.,* 89 Ohio L. Abs. 129, 184 N. E. 2d 925 (1961). These cases, and the instant case, should be distinguished from the decision of the United States Court of Appeals for the Fourth Circuit, which held that an automobile owned by an independent contractor who contracts with the insured to haul goods for him is not a hired automobile, as it was owned by the contractor and was not hired or rented by the insured. *American Casualty Co. v. Denmark Foods, Inc.,* 224 F. 2d 461 (4th Cir. 1955); see also to the same effect, *Kelley v. Phoenix Assurance Co. of N. Y.,* 225 F. Supp. 562 (D. Md. 1964). In the instant case, the essential ingredient, of a separate contract of hiring the automobile, was present. See 12 *Couch on Insurance 2d,* sec. 42.264.

Since the excess insurance provision of the Consolidated policy does not apply to the tractor hired by Apex, the only part of "Clause 7" of the Consolidated policy which limits the liability of that insurer is the *pro-rata* clause.[3]

---

3. The "other insurance" clause in Consolidated's policy differs from those involved in Citizens Mutual Auto Insurance Co. v. Liberty Mutual Insurance Co., 273 F. 2d 189 (6th Cir. 1960) and Continental Casualty Co. v. American Fidelity and Casualty Co., 275

Where an excess clause and a pro-rata clause appear in concurrently effective automobile liability policies, the majority of courts have disregarded the pro-rata clause and given full effect to the excess clause, making that insurer the "excess" insurer only. *McFarland v. Chicago Express, supra; American Surety Co. of N. Y. v. Canal Insurance Co.,* 258 F. 2d 934 (4th Cir., 1958) and cases cited therein; *Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co.,* 28 N. J. 554, 147 A. 2d 529 (1959); *Citizens Mutual Auto Insurance Co. v. Liberty Mutual Insurance Co.,* 273 F. 2d 189, 192-93 (6th Cir. 1960), reviewing the authorities. See also 8 Appleman, *Insurance Law and Practice,* Section 4914.

It should be frankly recognized that under this rule, the coverage provided by the policy containing the pro-rata clause is treated as "other insurance"; while the policy containing the excess clause is not regarded as "other collectible insurance" so that there is no reason for the pro-rata clause to become effective. Rather than resort to this interpretation, a minority of cases have held that where one "other insurance" clause conflicts with another, regardless of the nature of either clause, they are repugnant to each other and each should be rejected in toto; each insurer is held liable for a proportion of the loss. See *Oregon Auto Insurance Co. v. United States Fidelity & Guaranty Co.,* 195 F. 2d 958 (9 Cir. 1952); *Lamb-Weston, Inc. v. Oregon Automobile Insurance Co.,* 219 Or. 110, 341 P. 2d 110, 76 A.L.R.2d 485 (1959); *Arditi v. Massachusetts Bonding & Insurance Co.,* 315 S. W. 2d 736 (Mo. 1958); *Continental Casualty Co. v. St. Paul Mercury Fire & Marine Insurance Co.,* 163 F. Supp. 325 (D. C. S. D. Fla., 1958); Cf. *American Auto Insurance Co. v. Seaboard Surety Co.,* 155 Cal. App. 2d 192, 318 P. 2d 84 (1957).

This Court, however, believes itself bound by reason and authority to follow the majority rule. The terms "pro-rata" and "excess" do not have, and were not meant by the insurers

---

F. 2d 381 (7th Cir. 1960) cited by the appellant. In both these cases, involving fact situations similar to the instant case, the court gave effect to excess clauses in leasees' policies which expressly applied both to non-owned *and hired automobiles.*

to have, identical meanings. This is obvious from the "other insurance" clause in Consolidated's own policy, which provides for pro-rata coverage in some cases and excess coverage in others. A construction which will give a fair meaning to both terms, as used in "other insurance" clauses "is that the *excess* provision alone controls in every situation which falls within its terms * * * and that the *pro-rata* provision alone governs in all other situations, for example, when more than one policy has been issued to the same person." *American Auto Insurance Co. v. Republic Indemnity Co. of America,* 52 Cal. Rpts. 2d 507, 341 P. 2d 675, 678 (1959).

Moreover, the precise point involved in this case was implicitly decided by the holding of this Court in *Citizens Casualty Co. of N. Y. v. Allied Mutual Insurance Co., supra.* In that case, Citizens insured a husband who was involved in an accident while driving a vehicle owned by his wife. The wife was insured by Allied, whose policy contained an "omnibus clause" which covered the husband. Each policy provided that it should be excess insurance as to automobiles driven, but not owned, by the named insured; each policy provided that it should be pro-rata as to other "valid and collectible insurance against such loss." The Court gave effect to the excess clause in the Citizens policy issued to the husband and required Allied to pay the entire amount of the judgment and costs, all of which were within the limits of its policy.[4] Thus, in a conflict between an excess clause and a pro-rata clause, the excess clause was held to control.

In other decisions involving double coverage, this Court has given effect to an excess clause when it conflicts with an escape clause, *Zurich Insurance Co. v. Continental Casualty Co., supra;* and has held that when two pro-rata clauses conflict, each insurer is liable for a proportion of the loss. *Celina Mutual Casualty Co. v. Citizens Casualty Co., supra.*

We conclude that the Chancellor correctly decided that Con-

---

4. The principal question occupying the Court's attention was whether the Citizens policy was primary because it was issued to the husband in order for him to comply with Maryland's financial responsibility laws.

solidated was the primary insurer and the decree should be affirmed.

*Decree affirmed; the appellant to pay the costs.*