Nancy R. JONES, et al., Appellants,

v.

MEDOX, INC., et al., Appellees.

No. 79-433.

District of Columbia Court of Appeals.

Argued En Banc Oct. 20, 1980.

Decided April 9, 1981.

Gary W. Brown, Washington, D.C., for appellants.

Richard W. Galiher, Washington, D.C., for appellees.

Before NEWMAN, Chief Judge, KELLY, KERN, NEBEKER, HARRIS, MACK, FERREN and PRYOR, Associate Judges, and GALLAGHER,[*] Associate Judge, Retired.

GALLAGHER, Associate Judge, Retired:

The question presented is one of first impression in this jurisdiction and requires this court to scrutinize the "other insurance" clauses[1] of two insurance policies in order to determine how two insurance companies, insuring the same risk, should apportion liability. Specifically, this court must determine whether the pro rata clause in the policy issued by Globe Insurance and the excess clause in the policy issued by the Insurance Company of North America can be reconciled and interpreted to give effect to the intent of the contracting parties, or whether the clauses are irreconcilable and require that this court sweep away the contractual language of the parties and impose a pro rata share of the loss upon each insurance company.

Although this issue has never been addressed and resolved by this court, many other jurisdictions have grappled with this problem and two distinct lines of authority have emerged. Courts adopting the majority view have reconciled the pro rata clause and the excess clause by interpreting the policy containing the excess clause as secondary coverage where there is another insurance policy covering the same risk. The result, under this view, is that the excess insurer is generally liable for the loss only to the extent that the insured's claim exceeds the policy limits of the insurance policy containing the pro rata clause.

Appellant urges this court to reject the majority rule and instead to adopt the minority rule. Courts adopting the minority rule view the pro rata clause and the excess clause as conflicting and automatically require that each insurance company shoulder a pro rata share of the claim. We do not view such clauses as being irreconcilable and choose not to adopt a rule that requires this court automatically to sweep away the contractual language and, perhaps, the negotiated intent of the parties. We therefore decline to adopt the minority rule and affirm the decision of the trial court.[2]

This case originated in a malpractice action initiated by the plaintiff below who sustained injuries allegedly resulting from an injection administered by Nancy Jones, a nurse at Doctors Hospital. Defendants in

---

[*] Judge Gallagher was an Associate Judge of the court at the time of oral argument. His status changed to Associate Judge, Retired, on February 27, 1981.

[1] There are three basic types of "other insurance" provisions: the pro rata clause, the excess clause, and the escape clause. The pro rata clause provides that the insurer will pay its pro rata share of the loss, usually in the proportion that the limit of its policy bears to the aggregate limits of all valid and collectible insurance. The excess clause generally provides that the insurer's liability is limited to the amount by which the loss exceeds the coverage provided by all other valid and collectible insurance, up to the limits of the excess policy. The policy with the escape clause attempts to avoid all liability for the loss when there is other valid and collectible insurance. Frequently, where several insurance policies cover the same insurable risk, the courts are left to interpret and reconcile various "other insurance" clauses. For a good discussion of the judicial treatment of these clauses, see Comment, *Is There a Solution to the Circular Riddle? The Effect of "Other Insurance" Clauses on the Public, the Courts, and the Insurance Industry*, 25 So.Dak.L.Rev. 37 (1980) [hereinafter cited as *Is There a Solution to the Circular Riddle?*].

[2] Our earlier panel decision was reported at 413 A.2d 1288 (1980). As is customary, the panel decision was vacated when we granted rehearing en banc.

the action were Ms. Jones, the hospital, and Ms. Jones' employer, Medox, Inc., a corporation which provides temporary medical personnel to local doctors and hospitals. The case was settled for $100,000 pursuant to a settlement agreement which provided that the insurance companies representing all defendants would litigate separately their respective liabilities. In the event that this litigation was not concluded by March 1, 1978, the agreement provided further that Ms. Jones' insurer, Globe Indemnity Co., would pay the full amount of the settlement with no prejudice to its rights.

The insurers' liabilities were not adjudicated by the agreed date. Globe therefore paid the full amount of the settlement. Globe and Ms. Jones then brought an action against the hospital and its insurer, Hartford Insurance Co., and Medox and its insurer, Insurance Company of North America (INA). The trial court granted summary judgment to the hospital, Hartford Insurance Co., Medox, and INA, and dismissed the claim of Ms. Jones and Globe, thus ruling that Globe should bear the entire cost of the settlement. Ms. Jones and Globe have appealed the dismissal of their claim and the denial of their motions for summary judgment against Medox and INA.

The central dispute in this case is between INA and Globe and concerns the proper interpretation and application of two "other insurance" clauses, one in the INA policy and the other in the Globe policy. The "other insurance" clauses in both policies were designed to limit liability and to apply in situations where the insured event was also covered by another insurance company. At the time of the injection, Ms. Jones was the sole insured under the Globe policy. This policy had a $1,000,000 limit of liability and contained a pro rata "other insurance" clause which provided:

> If the insured has other insurance against a loss covered by this policy . . . the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability . . . bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

Ms. Jones was also covered under a provision of Medox's INA policy by which INA contracted with Medox to pay liabilities incurred under stated circumstances by Medox's employees and contractors. The applicable limit of liability in the INA policy was also $1,000,000 and the policy contained an excess "other insurance" clause which provided:

> The insurance afforded [by this policy] shall be excess insurance over any other valid and collectible insurance. [Hereinafter INA's blanket excess clause.][3]

We begin our discussion of the issue in this case by recognizing the confusion that pervades the entire realm of "other insurance" clauses. The problems created by "other insurance" provisions have been covered extensively in numerous articles in legal periodicals written during the past thirty years.[4] Some commentators have urged

---

**3.** INA's policy contained another excess "other insurance" clause which stated that the benefits of the policy were intended to be in excess of other insurance available to "the insured." The policy defined "the insured" as Medox or certain of its principals. Both the trial court and the parties on appeal devoted a great deal of attention to the question of whether Ms. Jones was "the insured" for the purpose of applying the excess provisions of this "other insurance" clause. Ms. Jones and Globe argued that Ms. Jones was not "the insured" for the purpose of applying this excess clause and that, therefore, the Globe insurance policy was not "other valid and collectible insurance" that triggered the excess clause in the INA policy. The broadly worded blanket excess clause,

however, overrides these provisions, and makes the resolution of this problem unnecessary. Apparently INA did not rely on its blanket excess clause at trial, although it is in the record.

**4.** *E. g., Is There a Solution to the Circular Riddle?, supra* note 1; Comment, *"Other Insurance" Clauses: The Lamb-Weston Doctrine*, 47 Or.L.Rev. 430 (1968) [hereinafter cited as *"Other Insurance" Clauses*]; Watson, *The "Other Insurance" Dilemma*, 16 Fed'n Ins. Counsel Q. 47 (1966); Comment, *Concurrent Coverage in Automobile Liability Insurance*, 65 Colum.L. Rev. 319 (1965); Snow, *Other Insurance Clauses—Multiple Coverage*, 40 Den.L.Center J. 259 (1963); Russ, *The Double Insurance Problem—A Proposal*, 13 Hastings L.J. 183 (1961);

that the insurance industry solve these problems by adopting uniform pro rata clauses in all insurance policies or that, in the alternative, a legislative solution be devised.[5] Because the insurance industry continues to employ "other insurance" clauses without defining the relationship of these clauses to one another in situations involving multiple insurance policies and because no legislative action has been taken, courts are sometimes forced "into a game that ought not, and need not, be played." *Schoenecker v. Haines*, 88 Wis.2d 665, 674, 277 N.W.2d 782, 786 (1979).

We turn now to analyze the majority and the minority rules and to confront the specific problem presented by the pro rata clause contained in the Globe policy and the excess clause contained in the INA policy. Most courts attempt to reconcile dissimilar "other insurance" clauses by giving effect to the intent of the parties through an examination of the language of the clauses whenever possible.[6] In order to reconcile a pro rata clause and an excess clause and to interpret the clauses so as to give effect to the intent of the parties, these courts reason that

> [W]here an excess clause is inserted in a typical ... liability insurance policy the usual intent of the insurer is that the policy will afford only *secondary* cover-

age when the loss is covered by "other insurance." On the other hand, a provision that limits a policy to only pro rata liability in the event of concurrent coverage usually is intended to become effective only when other valid and collectible *primary* insurance is available. [Comment, *Concurrent Coverage in Automobile Insurance*, 65 Colum.L.Rev. 319, 328 (1965) (citations and footnote omitted; emphasis in original).]

Stated another way, these courts assume that the standard phrase "other valid and collectible insurance" means other valid and collectible *primary* insurance. It follows, then, that the policy containing the pro rata clause is other valid and collectible primary insurance that triggers application of the excess clause in the second policy. The excess clause in the second policy therefore is given full effect and that carrier is liable only for the loss after the primary insurer had paid up to its policy limits. The policy containing the excess clause, however, is not considered to be other valid and collectible primary insurance for the purpose of triggering the operation of the pro rata clause, because when a stated contingency occurs, that is, when there is other valid and collectible primary insurance available to the insured, the policy containing the excess clause becomes secondary coverage only.[7]

---

Note, *Automobile Insurance—Effect of Double Coverage and "Other Insurance" Clauses*, 38 Minn.L.Rev. 838 (1954); Comment, *"Other Insurance" Clauses Conflict*, 5 Stan.L.Rev. 147 (1952); Gorton, *A Further Study of the Effect of the "Other Insurance" Provision Upon Automobile Liability Insurance*, 16 Ins. Counsel J. 190 (1949).

5. One commentator has presented a set of model rules aimed at solving problems related to "other insurance" provisions and has urged that these rules be adopted by the insurance industry or by direct legislation. Under these rules, escape clauses, which attempt to avoid all liability, would be prohibited as against public policy. Excess clauses would be given effect only where the insurer intends to provide secondary coverage exclusively and where the premium paid for such coverage is specifically based upon such limited contingent liability. The general rule urged by this commentator is that, in all cases involving multiple coverage, there shall be proration of liability among all

insurers up to the limits of their respective policies. *See Is There a Solution to the Circular Riddle?, supra* note 1, at 52–54.

6. *Is There a Solution to the Circular Riddle?, supra* note 1, at 42; *"Other Insurance" Clauses, supra* note 4, at 433.

7. Among the courts adopting the majority view are: *P. L. Kanter Agency, Inc. v. Continental Cas. Co.*, 541 F.2d 519 (6th Cir. 1976); *Ins. Co. of N. America v. Am. Home Assurance Co.*, 391 F.Supp. 1097 (D.Colo.1975); *Greenbriar Shopping Center, Inc. v. Lorne Co.*, 310 F.Supp. 303 (N.D. Ga.1969), *aff'd*, 424 F.2d 544 (5th Cir. 1970); *State Farm Mut. Auto Ins. Co. v. Am. Cas. Co.*, 433 F.2d 1007 (8th Cir. 1970); *Priester v. Vigilant Ins. Co.*, 268 F.Supp. 156 (S.D. Iowa 1967). *See also State Farm Mut. Auto Ins. Co. v. Gen. Mut. Ins. Co.*, 282 Ala. 212, 210 So.2d 688 (1968); *Demshar v. AAACon Auto Transport, Inc.*, 337 So.2d 963 (Fla.1976); *Allied Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 257 Iowa 100, 131 N.W.2d 798 (1964); *Atlantic*

Critics of this approach to interpretation of insurance contracts have argued that it requires a circularity of reasoning, and that the decision as to which policy constitutes other valid and collectible insurance triggering the "other insurance" clause of the second policy will depend on which contract is read first. *See, e. g., Oregon Automobile Insurance Co. v. United States Fidelity and Guaranty Co.*, 195 F.2d 958, 960 (9th Cir. 1952); *Werley v. United Services Automobile Association*, 498 P.2d 112, 117 (Alaska 1972). *See generally* Note, *Automobile Insurance—Effect of Double Coverage and "Other Insurance" Clauses*, 38 Minn.L.Rev. 838, 852 (1954). Disenchanted with the majority approach and with insurance companies' attempts to escape liability, a minority of courts have adopted the *Lamb-Weston* rule. *Lamb-Weston, Inc. v. Oregon Automobile Insurance Co.*, 219 Or. 110, 129, 341 P.2d 110, 119 (1959).[8] Courts applying the *Lamb-Weston* rule abandon all attempts to discern the intent of the contracting parties where there are dissimilar "other insurance" clauses and take the position that all "other insurance" clauses, regardless of their nature, are mutually repugnant, requiring proration of liability.[9]

The *Lamb-Weston* rule presents an appealingly simple and no-nonsense way to deal with the vagaries of insurance policies. A principal concern of courts adopting this rule apparently is that one insurance company is getting "stuck" and that regardless of the intent of the contracting parties as expressed in their "other insurance" clauses, two companies covering the same risk should pay equally. Courts swayed by this concern, however, have failed to recognize that the insurance companies have no contractual relationship with each other, and one company hardly needs to be protected from the other. Neither insurance company is getting "stuck" for anything more than it contracted to provide for its insured. Moreover, courts applying the *Lamb-Weston* rule ignore a basic rule of contracts requiring consideration of all the language in a policy to determine its meaning and intent.[10] By sweeping away the contractual language and, perhaps, the negotiated intent of the parties, these courts effectually are legislating mandatory pro rata clauses for insurance policies having "other in-

---

*Mut. Ins. Co. v. Continental Nat'l Am. Ins. Co.*, 123 N.J. Super. 241, 302 A.2d 177 (1973); *State Farm Fire and Cas. Co. v. St. Paul Fire and Marine Ins. Co.*, S.D., 268 N.W.2d 147 (1978); *Federated Am. Ins. Co. v. Hansen*, 17 Wash. App. 456, 563 P.2d 1303 (1977); *Groth v. Farmers Mut. Auto. Ins. Co.*, 21 Wis.2d 655, 124 N.W.2d 606 (1963).

8. *Lamb-Weston* involved a tort defendant whose agent was involved in an accident while driving a rented truck. The contending insurance companies were those of the tort defendant and of the lessor of the truck. The lessor's insurance contained an "omnibus" clause extending coverage to authorized lessee drivers. The postures of the insurance companies were opposite to those in this case, the tort defendant's policy containing the excess clause and the lessor's policy containing the pro rata clause. The court's decision appears to be grounded in frustration with numerous and difficult-to-apply rules and a generalized annoyance with insurance companies' attempts to escape liability. One commentator has asserted:

> An analysis of the out-of-state cases relied upon by [the *Lamb-Weston* court] leads one to the conclusion that although some of the language employed therein supports the decision in *Lamb-Weston*, neither the actual reasonings applied nor the holdings nor both together do. Each case either applies the rationale of the majority position or reaches a result entirely consistent with that rationale. ["*Other Insurance*" *Clauses, supra* note 4, at 437.]

9. It should be noted that some courts that have adopted the *Lamb-Weston* rule were not confronted with a pro rata clause and an excess clause. Rather, the courts were confronted with identical "other insurance" clauses. *See e. g., Sloviaczek v. Estate of Puckett*, 98 Idaho 371, 377, 565 P.2d 564, 569 (1977); *Werley v. United Serv. Auto. Ass'n, supra*. In *Sloviaczek* and *Werley*, the courts were faced with essentially identical clauses which provided excess coverage only in the amount by which the limit of liability of each exceeded the limit of the other. In such cases, the "other insurance" clauses are virtually always invalidated by the courts. *See* Russ, *supra* note 4, at 191. *See also Is There a Solution to the Circular Riddle?, supra* note 1, at 42.

10. *See* A. Corbin, Contracts §§ 545–554 (one volume ed. 1952); *Is There a Solution to the Circular Riddle?, supra* note 1, at 46.

surance" provisions. Courts generally should take such drastic action only when presented with clearly irreconcilable provisions.

Some commentators have noted that there is yet another reason not to adopt the *Lamb-Weston* rule. These commentators have observed that, by sweeping away the contractual language and the negotiated intent of the parties, the *Lamb-Weston* rule will have a substantial impact upon the insurance industry and policy rates. *See, e. g.*, Comment, *Is There a Solution to the Circular Riddle? The Effect on the Public, the Courts, and the Insurance Industry*, 25 So.Dak.L.Rev. 37, 47–48 (1980); Comment, *"Other Insurance" Clauses: The Lamb-Weston Doctrine*, 47 Or.L.Rev. 430, 445 (1968).[11] The commentators maintain that the validity of "other insurance" clauses is a factor included in actuarial tables used to determine premiums, and that, when a court adopts a rule that automatically invalidates these provisions, insurance underwriters must confront a new element of uncertainty. This uncertainty results in increased premiums for all policyholders, thus allowing the insurance company to maintain the actuarial soundness of the premium structure. Moreover, the commentators observe that there is a necessary duplication of claim investigation, claim supervision, and settlement and defense costs that result from the application of the *Lamb-Weston* doctrine. This duplication of effort on the part of multiple insurers also may play a role in increasing the cost of each claim and ultimately result in increased premiums to policyholders.

After carefully examining the majority position and the *Lamb-Weston* rule with all its ramifications, we conclude that the majority position is the better approach. We do not view a pro rata clause and an excess clause as being automatically in conflict or mutually repugnant. The interpretation of these clauses under the majority view is, as the highest court in Maryland has recognized, reasonable and fair:

> A construction which will give a fair meaning to both terms, as used in "other insurance" clauses "is that the *excess* provision alone controls in every situation which falls within its terms . . . and that the *prorate* [*sic*] provision alone governs in . . . , other situations, for example, when more than one [primary] policy has been issued to the same person." *American Auto Insurance Co. v. Republic Indemnity Co.*, 52 Cal.2d 507, 513, 341 P.2d 675, 678 (1959). [*Consolidated Mutual Insurance Co. v. Bankers Insurance Co.*, 244 Md. 392, 399, 223 A.2d 594, 599 (1966) (emphasis in original).]

*See also Ryder Truck Rental, Inc. v. Schapiro & Whitehouse, Inc.*, 259 Md. 354, 269 A.2d 826 (1970).

The rule in the District of Columbia, then, is that where there are two applicable insurance policies, one policy containing a pro rata clause and the other an excess clause, the provisions of each will be interpreted to give effect to the intent of the contracting parties. Generally speaking,

> There are decisions to the effect that the policy containing the pro-rata clause should always bear the whole loss when the other policy contains an excess clause. However, when the two contracts are compared in such cases, the other-insurance clauses frequently are not held to be repugnant. But *when repugnancy cannot be resolved by reference to the contracts*, the case is a proper case for the equitable rule set forth in *Lamb-Weston*. [*Liberty Mut. Ins. Co. v. Truck Ins. Exch., supra* at 39, 420 P.2d at 70–71 (citations and footnote omitted; emphasis supplied).]

The Oregon court thus limited the application of the *Lamb-Weston* rule.

11. Indeed, the Oregon court itself, subsequent to *Lamb-Weston*, implicitly indicated a similar concern with respect to the effect that the *Lamb-Weston* rule would have on the insurance industry. In *Liberty Mut. Ins. Co. v. Truck Ins. Exch.*, 245 Or. 30, 35, 420 P.2d 66, 69 (1966), the Oregon court noted that, in some instances, "[p]remiums [are] paid the excess carriers in light of the relatively remote risks so insured," and that applying the *Lamb-Weston* rule would force "excess-insurance carriers to participate in a loss contrary to the terms of their contracts." The court held, *inter alia*, that, where an insurer is an excess insurer only, the excess insurer is not required to pay a portion of the loss until the first layer of coverage is exhausted. The court observed:

the application of this rule will probably result in the excess clause being given full effect. The insurance company including a pro rata clause in its policy will be required to shoulder the loss up to its policy limit. We stress, however, that the determination of what is or is not valid and collectible insurance for the purpose of triggering an "other insurance" clause should not be made in the abstract, but must be based on a consideration of all the contractual terms of both applicable insurance policies. We also note that, by adopting the majority rule with respect to pro rata and excess clauses, we do not rule out the possibility that in some instances this court may find it necessary to affirmatively intervene in order to resolve conflicts between "other insurance" clauses, for in some instances it may be impossible to reconcile the two clauses or to give effect to the intent of the contracting parties. Where, for example, the applicable portions of the two "other insurance" clauses are identical excess clauses, even those courts adopting the majority view almost always require the insurers to apportion the liability. *See, e. g., State Farm Fire and Casualty Co. v. St. Paul Fire and Marine Insurance Co.*, S.D., 268 N.W.2d 147, 149 (1978).[12] Such cases present a true problem of circularity. Each insurer, claiming that the other must pay first, declines to pay at all. A literal interpretation of the policies containing conflicting excess clauses would leave the insured without any coverage where it first appeared that he had double coverage. In these cases, there is no rational reason to give the language of one policy preference over identical language in the other policy. *See generally Is There a Solution to the Circular Riddle?, supra* note 1, at 42. This is not the case before us.

We consider that Globe's pro rata clause and INA's blanket excess clause are not irreconcilable. Globe's provision contemplates contribution from all other valid and collectible insurance. INA is *not* collectible insurance for this purpose because INA's blanket excess clause expressly states that it *will not* pay if the claim is covered by any other valid and collectible insurance and does not exceed the policy limit of that other insurance. Globe *is* collectible insurance under INA's clause because it states that it will pay the claim in any event, subject to any applicable pro rata contribution. The Globe contract does not foresee the possibility that another insurance policy should constitute only excess coverage and does not provide for this possibility in its other insurance clause. Thus, applied together, the two policies result in Globe being liable for any claim up to its policy limit, with INA picking up any excess.

It has been observed that "[q]uestions of contribution between coinsurers have caused much trouble to the courts, a large part of which has arisen through efforts to equalize equities outside the contract," and that "[t]his trouble is lessened if the parties are left with their contracts as they themselves have made them." *Grollimund v. Germania Fire Insurance Co.*, 82 N.J.L. 618, 621, 83 A. 1108, 1109 (1912), *quoted in Citizens Mutual Automobile Insurance Co. v. Liberty Mutual Insurance Co.*, 273 F.2d 189, 194 (6th Cir. 1969) *and in American Surety Co. v. American Indemnity Co.*, 8 N.J. Super. 343, 345, 72 A.2d 798, 799 (Ch.Div.1950). For this reason, we reject the *Lamb-Weston* rule and adopt the majority view, which focuses on the contractual provisions and the intent of the parties.[13] In this case, INA's excess clause was triggered and the claim did not exceed Globe's policy limit.

---

**12.** *Cf. Employers' Liab. Assurance Corp., Ltd. v. Fireman's Fund Ins. Group*, 104 U.S.App. D.C. 351, 262 F.2d 239 (1958). In *Employers' Liability*, the court was confronted with two excess clauses. After considering the specific clauses and the circumstances of the case, the court held that, under the policies of the lender and the borrower of a substitute automobile, the lender's policy was primary and that the borrower's insurer was not liable for damages unless the claim exceeded the lender's policy limit.

**13.** At the same time, however, we join the view that the insurance industry should at long last provide the impetus to deal with the recurring problem generated by "other insurance" clauses. *See* note 4 & accompanying text *supra*.

Thus, INA was exonerated from all liability. We affirm the trial court's decision that Globe must bear the entire cost of the settlement.

*Affirmed.*

PRYOR, Associate Judge, with whom NEWMAN, Chief Judge, and MACK, Associate Judge, join, dissenting:

This case involves perplexing questions raised by "other insurance" clauses in separate insurance policies which insure the same risk. Appellees argue, and the majority accepts, the premise that construing the respective clauses in a manner which would require both companies to share the coverage of the loss which they insured, overrides the contractual intent of the parties and places the court in the role of the legislature.

A closer look at this area of insurance coverage reveals a myriad of variables which are sometimes confusing and often impose the greatest hardship on the consumer, the insured:

1. Initially there is the question of primary and secondary coverage. Does the language of the policy purport to insure a given risk unconditionally and simply limit the amount of the insurer's liability or is the policy intended solely as a secondary source of insurance?

2. Where the policies purport to afford coverage to a given event but are nonetheless limited by "other insurance" clauses, there are, of course several possibilities, *i. e.*, pro rata v. pro rata; pro rata v. excess; and excess v. excess.

3. As a means of determining priority, the question is sometimes raised, as here, whether the person claiming coverage was individually insured by one policy as compared to group coverage by another company.

Most of the commentators who have studied this question perceive, and the majority acknowledges,[1] that the labyrinth which the consumer sometimes encounters, is largely attributable to the continuing practice of the insurance industry in drafting "other insurance" clauses which often defy definition.

This case is illustrative. Both companies purported to insure the same risk: the negligence of a nurse. Each policy contained an "other insurance" clause. Because the insurers were themselves uncertain as to the resolution of this question in this jurisdiction, this litigation evolved. In support of their position, appellees first point out that their coverage was directed to a group of hospital employees whereas the other insurance protected the insured individually. Utilizing still another rationale, it is urged that the excess clause can be reconciled with the pro rata provision of the other policy and that the court should remain passive in interpreting the clauses. Interestingly, appellees concede, as they must, that this same approach cannot prevail when we confront two excess provisions. In that circumstance, either the insurance companies must arrange a settlement or the court must intercede. Otherwise the language of the contracts would indicate no coverage by either company. When a court attempts to construe these provisions, drafted by the insurers, in an orderly and predictable fashion, it is hardly the "sweeping away of the negotiated intents" of the parties; rather I suggest, it is simply an interpretation within reasonable judicial restraint, which along with the legitimate concerns of the insurance companies, takes into account the public interest. An Oregon court described the situation aptly:

> This court believes it is good public policy not to put an insured plaintiff, or a defendant who is fortunate enough to have duplicate coverages, in a position where there is any possibility one insurer can say, "After you, my dear Alphonse!" while the other says, "Oh, no, after you my dear Gaston." They must walk arm in arm through the door of responsibility. [*Firemen's Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 243 Or. 10, 15, 411 P.2d 271, 274 (1966).]

---

1. Majority opinion at 490–491.

Thus, a different approach, sometimes called the *Lamb-Weston*[2] rule, is considered by some to be a more balanced and equitable solution.

It does not arbitrarily pick one of the conflicting clauses and give effect to it; it does not deprive the insured of any coverage; it is not prejudicial in giving a windfall to one insurer at the expense of another; it does not encourage litigation between insurers. It does not delay settlements. On the other hand, it does enable underwriters to predict the losses of the insurers more accurately; it does preclude the use of illogical rules developed by the courts (e. g., first in time, specific v. general and primary tort-feasor doctrines); and it does give a basis for uniformity of result. In addition, prorating the loss among all insurers is a rule that can be applied regardless of the number of insurers involved and regardless of the type of conflicts that are created by the "other insurance" clauses. Finally, the rule is simpler, more convenient, and easier to apply than the majority rule. [Note, *Conflicts Between "Other Insurance" Clauses in Automobile Liability Policies*, 20 Hastings L.J. 1292, 1304 (1969), cited in *Werley v. United Services Automobile Association*, 498 P.2d 112, 117 (Alaska 1972).]

For the reasons set forth in the opinion of the division, *Jones v. Medox, Inc.*, D.C.App., 413 A.2d 1288 (1980), vacated by our en banc order May 5, 1980, the *Lamb-Weston* rule is favored. It should not prove burdensome to insurance companies. They need only avoid the present practices and state in a clearer fashion the extent of their intended coverage.

---

2. *Lamb-Weston, Inc. v. Oregon Auto. Ins. Co.*, 219 Or. 110, 341 P.2d 110 (1959).