**RELIANCE INSURANCE COMPANY, Appellant,**

v.

**ST. PAUL SURPLUS LINES INSURANCE COMPANY,
Appellee.**

**No. 84–1222.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 30, 1984.

Decided Feb. 7, 1985.

John F. Anderson, Fairfax, Va. (Boothe, Prichard & Dudley, Fairfax, Va., on brief), for appellant.

Kenneth G. Roth, Fairfax, Va. (Stephen L. Altman; Donahue, Ehrmantraut, & Mondedonico, Fairfax, Va., on brief), for appellee.

Before WINTER, Chief Judge and RUSSELL and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

Reliance Insurance Company (Reliance) brought this action against St. Paul Surplus Lines Insurance Company (St. Paul) to recover one half of the amount Reliance paid to a mutual insured in settlement of a property damage claim. On submitted briefs, the district court found that where a property loss is covered by two insurance policies, both containing excess clauses, the loss should be apportioned on a pro rata basis according to the amount of coverage provided by each insurer. Thus, due to the fact that St. Paul's coverage was one-thirtieth that of Reliance's coverage, the court ordered St. Paul to bear one-thirtieth share of the loss, or $700, instead of one half of the loss, $10,500, as urged by Reliance. On appeal, Reliance asks us to reject the district court's adherence to the policy limit method of apportionment and apply instead the equal share method whereby the loss is shared equally until the limit of the smaller

policy is reached, with the remaining portion paid from the larger policy up to its limit. We find Reliance's authorities persuasive and reverse.

## I

On August 20, 1981, Dodge House Associates procured from St. Paul Surplus Lines Insurance Company a policy insuring Dodge House Associates against all risk of direct physical loss or damage to property located at 1517 30th Street, N.W., Washington, D.C., resulting from any external cause except those risks or losses excluded in the policy. The limit on the coverage was $250,000.

On the same day George H. Walker, Inc., Richard Nadeau and Dodge House, Inc., t/a Dodge House Associates, procured from Reliance Insurance Company a policy insuring against all risks of direct physical loss or damage to the same property except those risks or losses excluded in the policy. The limit on this coverage was $7,500,000.

Paragraph 8 of the St. Paul policy provides: "This policy shall not cover to the extent of any other insurance whether prior or subsequent, and this company shall be liable for loss or damage only for the excess value beyond the amount due from such other insurance."

Similarly, the Reliance policy provides: If at the time of loss or damage, there is available to a named insured or any other interested party any other insurance which would apply in the absence of this policy, the insurance under this policy shall apply only as excess insurance over such other insurance whether collectible or not, and shall in no way be considered as contributing insurance.

On January 10, 1982, extremely cold weather caused water pipes within the insured property to burst, and on May 11, 1982, Dodge House, Inc. and George Walker, Inc., t/a as Dodge House Associates, filed an action against Reliance in the United States District Court for the Eastern District of Virginia, claiming that as a result of the broken pipes, they suffered damage in the amount of $50,000.

Reliance negotiated in good faith with the plaintiffs and reached a reasonable settlement in which the plaintiffs agreed to accept $21,000 as full compensation for the loss incurred. Reliance paid the plaintiffs $21,000, and on October 20, 1982, the case was dismissed as settled.

On behalf of Dodge House Associates, Mr. Nadeau executed a Release and Assignment releasing Reliance from all claims arising from the frozen pipes, and Dodge House Associates assigned to Reliance all of its right, title, and interest in any cause of action it had by virtue of the St. Paul policy. Reliance then brought this action against St. Paul to recover one half of the amount it paid to Dodge in settlement of the property damage claim. Reliance argued that the two insurers should share the loss on an equal basis with St. Paul owing Reliance $10,500. St. Paul, however, argued that the liability should be apportioned on a pro rata basis according to the amount of coverage provided by each insurer.

The district court decided the case on the briefs finding that the liability should be apportioned on a pro rata basis with St. Paul owing Reliance $700. Reliance appeals.

## II

The sole issue on appeal is how to apportion a loss between two insurers, each with policies containing an excess clause. When two insurance policies cover the same risk and each contains an excess clause, the clauses are considered mutually repugnant and are disregarded. Once disregarded, the general coverage of each policy applies and the insurers are obligated to share the loss. *Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co.*, 28 N.J. 554, 147 A.2d 529, 533 (1959). Reliance and St. Paul Insurance have agreed that the two clauses are mutually repugnant. Therefore, there is no issue as to who is the primary insurer. Instead, both act as primary insurers thereby making each responsible for the loss. The District

of Columbia Court of Appeals has given no indication of the preferable formula for prorating such a loss. Other jurisdictions follow one of three approaches.

The majority approach prorates the total loss on the basis of the maximum coverage limits of each policy. *St. Paul Mercury Insurance Co. v. Underwriters at Lloyds of London*, 365 F.2d 659 (10th Cir.1966). This policy limit method of apportionment is claimed to be meritorious on the grounds that it is simple to administer, affixes the responsibility of the insurer in proration to the total coverage which that insurer undertook to provide, and acknowledges that both insurers do not stand on an equal footing where there are significantly different liability limits.

Some jurisdictions, however, have criticized the majority method as being inequitable because the cost of purchasing insurance does not increase proportionately with the policy limit; that is, the principal expense in purchasing insurance is the cost of minimum coverage, with additional amounts of coverage being relatively inexpensive in comparison. *Ruan Transport Corp. v. Truck Rentals, Inc.*, 278 F.Supp. 692 (D.Colo.1968). Thus, some jurisdictions hold that if proration is to be administered on the basis of the insurer's obligation, it should be apportioned according to the amount of the premium paid by each insurer rather than according to the maximum policy limit afforded. *Insurance Company of Texas v. Employers Liability Assurance Corp.*, 163 F.Supp. 143 (S.D.Cal.1958). Prorating on the basis of premiums paid, however, also has been criticized on the grounds that unless the policies provide identical coverage, many variables may effect the amount of premium charged thereby making the amount of premium received an inaccurate reflection of the insurer's ultimate obligation.

■ Those jurisdictions which have rejected the policy limit and premium based methods of apportionment as inequitable have applied instead the equal share method of apportionment. The equal share method apportions the loss equally between the two insurers until the coverage provided by one is exhausted, with any remaining portion of the loss being paid by the other insurer until its policy limit is reached. *Cosmopolitan Mutual Insurance Co.*, 147 A.2d at 533. Thus, where as in this case, the total liability does not exceed the maximum limit of either policy, each insurer would be responsible for one half of the actual loss. The basis of this equal division is that if either insurer had been the sole primary insurer, it would have been responsible for the total loss. Therefore, the presence of two or more insurers should not allow one insurer to pay less than the other.

A growing number of jurisdictions are recognizing that the equal share method is a more equitable and reasonable method of apportionment than the policy limit method. *Liberty Mutual Insurance Co. v. Pacific Indemnity Co.*, 557 F.Supp. 986, 989–990 (W.D.Pa.1983); *American Home Assurance Co. v. American Employees Insurance Co.*, 384 F.Supp. 3, 6 (E.D.Pa.1974); *Allstate Insurance Co. v. Atlantic National Insurance Co.*, 202 F.Supp. 85, 88 (S.D.W.Va.1962); *State Farm & Casualty Co. v. Holton*, 131 Ga.App. 247, 205 S.E.2d 872, 874 (1974). Support for this method is founded in the seemingly inequitable results which flow from the use of the policy limit method.

The primary reason for applying the policy limit method is that it imposes a burden on the insurer which is proportional to the amount of coverage afforded the insured. Thus, the policy limit method assures that the insurer who accepts the higher risk, and thus a larger premium, is responsible for more of the loss. This reasoning, however, breaks down when the premium charged does not increase proportionately with the amount of coverage. When this occurs, as it frequently does, the appeal of the policy limit method disappears.

Additionally, the policy limit method unfairly discriminates against the high risk insurer where, as in this case, the high risk insurer and the low risk insurer both have undertaken to insure against the low-loss

by charging a substantial premium. Under the policy limit method the high risk insurer is forced to pay more of this low-loss, thereby subsidizing the low risk insurer. The low risk insurer ends up being released from all but a nominal burden even though it charged a substantial premium for the low-loss coverage. The final result of such action is an increase in the premiums for additional high risk coverage over the amount necessary to cover such a loss. The ultimate effect of the increase is to discourage insureds from purchasing high risk coverage. *Carrier's Insurance Company v. American Policyholders' Insurance*, 404 A.2d 216 (Me.1979).

Reliance contends that the equal share method is the more reasonable and equitable approach for the District of Columbia courts to follow in apportioning such a loss. St. Paul, however, argues that the District of Columbia courts should follow the policy limit method when apportioning a loss covered by multiple policies with varying policy limits. St. Paul contends that the District of Columbia Court of Appeals' holding in *Jones v. Medox, Inc.*, 430 A.2d 488 (D.C. App.1981), is dispositive of the issue. We disagree. *Jones* involved two insurance policies, each affording medical malpractice insurance to a single insured. One policy contained an excess clause, the other policy a pro rata clause. In discussing how to resolve the situation involving two "other insurance" clauses, the *Jones* court in dicta commented that where there were two policies, both having excess clauses, the clauses become irreconcilable, thereby necessitating that the loss be apportioned. The *Jones* court, however, did not discuss what method would be best to use in apportioning such a loss. Instead, the court merely cited the case of *State Farm Fire & Casualty Co. v. St. Paul Fire & Marine Insurance Co.*, 268 N.W.2d 147 (S.D.1978), which, like *Jones*, was confronted with the reconciliation of two insurance policies, one with an excess clause and one with a pro-rata clause. Thus, we find that *Jones* did not address the issue of how to apportion a loss covered by two policies, each containing an excess clause.

 Accordingly, we find that the district court erred when it decided to pro rate the loss between Reliance and St. Paul on the basis of *Jones*. Furthermore, in view of the possible inequities which result from the use of the policy limit method, we are of the opinion that where, as here, a loss is covered by two policies of varying limits, with each having primary responsibility for the total loss, the loss should be apportioned equally. While there is no binding District of Columbia decision in agreement, there is every reason to predict that the District of Columbia courts will follow this better reasoned rule. Thus, we find that St. Paul must bear one half of the $21,000 loss or $10,500, plus one half the costs and expenses, including one half of reasonable attorney's fees in handling the claim of Dodge House, Inc.

REVERSED.