487 A.2d 1191

**NATIONAL INDEMNITY COMPANY**

v.

**CONTINENTAL INSURANCE COMPANY.**

No. 551, Sept. Term, 1984.

Court of Special Appeals of Maryland.

Feb. 11, 1985.

W. Barry Wraga, Rockville (William H. Clarke and Galiher, Clarke & Galiher, Rockville, on the brief), for appellant.

John J. O'Neill, Jr., Rockville (Ford & O'Neill, Rockville, on the brief), for appellee.

Argued before ALPERT, ROSALYN B. BELL and KARWACKI, JJ.

ROSALYN B. BELL, Judge.

"Once a can of worms has been opened, the only way to fit them back in is to use a larger can."

-Unknown

This quotation illustrates the difficulty faced in determining primary and secondary liability between insurance companies when the policies contain conflicting limitation clauses and endorsements.

Ridgeway Trucking Company, Inc. (Ridgeway), entered into a lease agreement with Scientific, Inc. (Scientific), under which a tractor owned by Ridgeway would be rented by Scientific to haul its trailer. Ridgeway also hired a driver, Andrew Dorsey, to operate the tractor-trailer. On September 26, 1979, Dorsey was driving the vehicle and collided with two trucks.

National Indemnity Company (National) and Continental Insurance Company (Continental) insured Ridgeway's tractor and Scientific's trailer, respectively. The policies provid-

ed similar coverage of the equipment, and each contained identical language limiting the insurer's liability if other insurance was available. Because Continental refused to respond to the claims for damages arising out of the accident, National presented a defense and negotiated a settlement.

After resolution of the claims, National brought a declaratory judgment action against Continental in the Circuit Court for Montgomery County. National argued that Continental should bear primary responsibility for the payment of damages. The circuit court disagreed, however, and ruled in favor of Continental. National appeals this decision based on its interpretation of the two insurance policies.

Appellant argues that the provisions of each policy, as modified by endorsements, place primary liability on appellee. Specifically, the coverage under appellant's policy becomes secondary or excess when a commercial vehicle is leased to someone other than the insured, or when a non-owned vehicle (such as the trailer) is involved. Thus, because Scientific leased the tractor from Ridgeway, the insured, the stipulation for excess liability becomes effective. For additional support, appellant points to an endorsement in appellee's policy, which extends primary coverage to a vehicle rented by the insured for business use. Since Scientific is the insured of appellee and rented Ridgeway's vehicle (the tractor), primary coverage applies to the tractor. Appellant further asserts that, contrary to appellee's view, these policies remain unaffected by the terms of the lease agreement between the insured parties.

In response, appellee claims that the parties' lease agreement, requiring Ridgeway to obtain liability insurance, makes appellant primarily liable. The Certificate of Insurance to which appellee refers specified that coverage by appellant extended to both Ridgeway's tractor and any trailer attached to it. Appellee notes that the endorsement relied upon by appellant as creating primary coverage for

hired vehicles did not include the requisite description of the tractor and, therefore, could not apply to Ridgeway's vehicle.

This Court must determine the proper interpretation of the policies and, consequently, assess the liability of each insurance company. Before further discussion, a brief explanation of the relevant terminology is appropriate.

Double coverage exists when more than one insurance policy covers a claim. 8A J. Appleman, Insurance Law and Practice § 4907.65 at 364 (rev. ed. 1981). Often the policies contain clauses that limit the insurer's liability based on the availability of other coverage. These "other insurance" clauses indicate the allocation of responsibility among the insurance companies involved. *Id.* at 365. The three basic types of provisions are: 1) escape clause, 2) excess clause, and 3) pro rata clause.

An *escape clause* generally states that the insurer will not pay benefits under its policy when other insurance exists to compensate the claimant. *Id.* § 4906 at 349–52. In lease situations, especially those concerning commercial vehicles, a common limitation is an *excess clause*. This provision specifies that the insurance company will make payment on the policy so long as: 1) it becomes liable only after the claimant has recovered the sums available under the other policies involved, and 2) it pays an amount equal to the difference between the total insurance paid by the other companies and the limit of its own policy. *Id.* at 347–49. In effect, if Policy A provides $100,000 insurance, and Policy B provides $150,000, then Policy B would pay $50,000 pursuant to an excess clause. Finally, a *pro rata clause* limits an insurer's liability to its proportionate share in relation to all available coverage. *Id.* at 345.

■ The Court of Appeals of Maryland has held that "[i]nsurance policies, being contractual, are construed as other contracts." *Bond v. Pennsylvania National Mutual Casualty Insurance Company*, 289 Md. 379, 384, 424 A.2d 765 (1981). *See also, National Grange Mutual Insurance*

*Company v. Pinkney,* 284 Md. 694, 705, 399 A.2d 877 (1979). Thus, the court interprets the policy provisions based on their plain meaning. If the insurance contract contains ambiguous language, the trier of fact determines the proper construction. *Bond, supra; National Grange, supra.*

■ In a situation involving double coverage, a court attempts "to reconcile the conflicting clauses." *Consolidated Mutual Insurance Company v. Bankers Insurance Company,* 244 Md. 392, 396, 223 A.2d 594 (1966). *Consolidated* involved a dispute between two insurance companies regarding their respective liability. The Court of Appeals noted that "the rights and liabilities of the different insurers involved should depend, as far as possible, upon the specific language of the policies." *Id.* Preliminarily, this evaluation requires a determination of the type of other insurance clause involved—escape, excess, or pro rata. After making this characterization, the conflict is resolved as follows:

(1) An excess clause always prevails over an escape or a pro rata clause. In effect, the policy with either of the latter two clauses becomes primary coverage, and the excess insurer becomes secondarily liable. *Consolidated Mutual Insurance Company,* 244 Md. at 400 [223 A.2d 594].

(2) A conflict between two policies containing pro rata clauses results in each insurer sharing liability. Neither policy is considered primary or secondary. *Celina Mutual Casualty Company v. Citizens Casualty Company,* 194 Md. 236, 245 [71 A.2d 20] (1950); *Consolidated Mutual Insurance Company, supra.*

(3) When a conflict occurs between two excess clauses, liability is shared equally by the insurers. *Ryder Truck Rental, Inc. v. Schapiro & Whitehouse, Inc.,* 259 Md. 354, 364–65 [269 A.2d 826] (1970).

■ In the present case, each policy contained the same other insurance clause, stating in pertinent part:

"If the named insured has other insurance against a loss covered by this insurance, the company shall not be liable under this insurance for a greater proportion of such loss than the applicable limit of liability stated in the declarations * bears to the total applicable limit of liability of all valid and collectible insurance against such loss...."

This language indicates the limitation of liability to a pro rata basis. If only this conflict existed, the companies would share the loss, with neither bearing primary or secondary responsibility. *Celina Mutual Casualty Company, supra; Consolidated Mutual Insurance Company, supra.* The entire policy must be considered, however, because insurance policies are "construed in the same manner as any other contract." *Federal Insurance Company v. Allstate Insurance Company,* 275 Md. 460, 472, 341 A.2d 399 (1975). *See also, Little v. First Federated Life Insurance Company,* 267 Md. 1, 5, 296 A.2d 372 (1972). Pursuant to this requirement, we will proceed to evaluate the endorsements added to the insurance contracts at issue.

Appellant's coverage of Ridgeway's tractor included two significant endorsements. The "General Change Endorsement" stated:

"Such insurance as is afforded under this policy shall extend ... to cover any undescribed Semi-trailer while being towed by an 'owned automobile'...."

When the accident occurred, Scientific's trailer was being towed by Ridgeway's owned vehicle. The specific inclusion of a trailer, as modified by the general other insurance clause, implies that appellant's policy provided pro rata coverage of Scientific's trailer. A further indication of this interpretation appears in the Certificate of Insurance issued by appellant, which explicitly stated that the policy covered "any undescribed trailer." Although the certificate also

---

* This language is taken from appellant's policy. Appellee's policy substitutes "schedule" for "declarations," but the remainder of the clause is identical to that quoted above.

contained a section concerning "Excess Liability," the space remained blank.

The other endorsement, labelled "Truckmen," referred only to the tractor. The relevant portion read:

"With respect to (1) any automobile of the commercial type while leased or loaned to any person or organization, other than the named insured, engaged in the business of transporting property by automobile for others ... the insurance under this endorsement shall be excess insurance over any other valid and collectible insurance, whether primary, excess or contingent, available to the insured. Otherwise, the insurance under this endorsement is primary insurance."

If effective, this provision would limit appellant's liability and make appellee primarily liable for damages. To determine whether this result applies, we will review the coverage available under appellee's policy.

Coverage of Scientific's trailer by appellee included an endorsement entitled "Hired Automobiles—Specified Car Basis." This clause extended the application of the policy to the vehicle "described herein or designated in the policy as subject to this endorsement." Neither this attachment nor the policy contained a description of Ridgeway's tractor that would make the provision effective.

A separate clause in appellee's insurance contract states:

"With respect to a hired automobile, or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured."

This language extends limited coverage to Ridgeway's tractor in the form of excess insurance. The modifications, however, do not affect the insurance available to Scientific for the trailer; appellee remains liable for a pro rata share.

 Our assessment of the conflicting clauses in appellant's and appellee's policies leads to the following characterizations:

1. Tractor owned by Ridgeway:

 a. Appellant's policy covering tractor and containing "other insurance" provision serves as an excess clause.

 b. Appellee's policy which limits liability for a hired vehicle is an excess clause.

2. Trailer owned by Scientific:

 a. Appellant's policy specifically including trailers, as modified by "other insurance" clause, results in pro rata coverage.

 b. Appellee's policy covering trailer and containing the same "other insurance" clause as appellant's, creates pro rata coverage.

In applying the formula for settling these conflicts, we conclude that appellant and appellee share insurance liability concerning the tractor and the trailer. The conflict between two excess clauses is resolved by creating pro rata liability, 8A Appleman, § 4906 at 346; *id.*, § 4909 at 395–96, and the conflict between two pro rata clauses results in shared liability without ranking either policy as primary or secondary. *Celina Mutual Casualty Company, supra; Consolidated Mutual Insurance Company, supra.*

The provision attached to the lease agreement stating that Ridgeway would obtain insurance coverage for Scientific's trailer does not change the result. While the Maryland courts have not specifically addressed this issue, the general view is that "[t]he liability of the respective insurers is largely determined by their policies rather than by the lease agreements." 8A Appleman, § 4911 at 493. The rationale behind such a position is that the insurance companies did not become parties to the lease agreement. *Transport Indemnity Company v. Home Indemnity Company,* 535 F.2d 232 (3d Cir.1976). Thus, even though the agreement may serve as a valid contract between Ridgeway and Scientific, it does not change the respective liabilities of appellant and appellee enumerated above. *See id.; Allstate Insurance Company v. General Fire and Casualty Company,* 348 F.Supp. 682 (E.D.Pa.1972); *Transport Indemnity Company v. American Fidelity & Casualty Company,* 84 Cal.Rptr. 856, 4 Cal.App.3d 950 (1970).

Pursuant to our conclusion that appellant's and appellee's insurance policies require the companies to share liability, we reverse and remand the case for proceedings consistent with this opinion.

JUDGMENT REVERSED. CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.